11TH CIR. CASE NO. 16-10763-E
M.D. FLA. CASE NO. 8:14-CV-01762-JSM-TBM

_____

# In the United States Court of Appeals for the Eleventh Circuit

_____

DR. MICHELLE G. SCOTT, M.D.

*Plaintiff–Appellant,*

v.

SARASOTA DOCTORS HOSPITAL, INC., ET AL.

*Defendants–Appellees.*

_____

**APPENDIX FOR APPELLANT'S OPENING BRIEF**

_____

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**

_____

DOROTHY F. EASLEY, MS JD BCS APPEALS*
EASLEY APPELLATE PRACTICE PLLC
1200 BRICKELL AVENUE, STE 1950
MIAMI, FLORIDA 33131
T: (305) 444-1599; 800-216-6185
FLORIDA BAR DESIGNATED E-MAIL:
administration@EasleyAppellate.com (primary)
admin2@EasleyAppellate.com (secondary)
www.easleyappellate.com

*\* Counsel of Record*          *Appellate Counsel for Appellant*

## INDEX TO APPENDIX

**Document Date and Name with [Record Citation]**                    **Tab No.**

Docket Sheet ...................................................................................................1

July 21, 2015 Dr. Michelle G. Scott's
 Complaint with Jury Demand [DE1] ...............................................2

August 29, 2014 EmCare's Answer and
 Affirmative Defenses [DE7]..............................................................3

September 15, 2014 Sarasota Doctors Hospital's
 Answer and Affirmative Defenses [DE12]........................................4

November 5, 2015 Order Granting EmCare's
 Motion for Summary Judgment [DE90] ...........................................5

November 5, 2015 Judgment in Favor of
 EmCare [DE91] .................................................................................6

November 22, 2016 Jury Verdict [DE136] .........................................7

November 22, 2016 Jury Instructions [DE139]...................................8

November 22, 2016 Final Judgment on Jury Verdict
 in Favor of Sarasota Doctors Hospital [DE140]...............................9

March 7, 2016 Order Denying Dr. Michelle Scott's
 Motion for New Trial [DE166] ....................................................... 10

EASLEY APPELLATE PRACTICE, PLLC, 1200 BRICKELL AVE., SUITE 1950, MIAMI, FLORIDA 33131  305-444-1599  800-216-6185

*Scott vs. Sarasota Doctors Hospital, etc., et al,* 11th Cir. Case No. 16-10763

### CERTIFICATE OF TYPE, SIZE AND STYLE

Pursuant to the Eleventh Circuit Rule 28-2(d), the Petitioner certifies that the size and style of type used are: Times Roman 14 Point Font; less than 10 characters per inch; proportionately spaced.

Respectfully submitted,

BY:  /S/ DOROTHY F. EASLEY
DOROTHY F. EASLEY, MS, JD, BCS APPEALS
FLA. BAR NO. 0015891
**EASLEY APPELLATE PRACTICE, PLLC**
1200 BRICKELL AVE., SUITE 1950
MIAMI, FLORIDA 33131
T: 305-444-1599; 800-216-6185
Emails: administration@easleyappellate.com
admin2@easleyappellate.com (secondary)
*Appellate Attorneys for Appellant*

Dated this  May 21, 2016 .

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.    This Appendix complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6). It has been prepared in Word 2010 using a proportionally spaced Times Roman 14 point font.

BY:  /S/ DOROTHY F. EASLEY
DOROTHY F. EASLEY

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Appellant's Opening-Initial

Brief <u>and Appendix were</u> filed using the CM/ECF system and Appellant's Opening-Initial

Brief <u>and Appendix were</u> sent to the Eleventh Circuit Court of Appeals  and served via

**eMail *or* this firm's secure dropbox URL** this ___May 21, 2016___  to the following

attorneys:

BY:   /s/ DOROTHY F. EASLEY
DOROTHY F. EASLEY

### Service List

*DR. MICHELLE G. SCOTT v. SARASOTA DOCTORS HOSPITAL, INC., ET AL.*
11TH CIR. CASE NO. 16-10763

MERRY E. LINDBERG, ESQ.
FORDHARRISON, LLP
1450 Centrepark Blvd., Suite 325
West Palm Beach, FL 33401
T: (561) 345-7505
F: (561) 345-7501
mlindberg@fordharrison.com
*Attorneys for Defendant WFPN and*
*Doctors Hospital*

TRACEY K. JAENSCH, ESQ.
FORDHARRISON, LLP
101 E Kennedy Blvd., Suite 900
Tampa, FL 33602-5133
T: (813) 261-7800
F: (813) 261-7899
tjaensch@fordharrison.com
*Attorneys for Defendant WFPN and*
*Doctors Hospital*

MATTHEW L. RANSDELL, ESQ.
JACKSON LEWIS P.C.

JESSE M. TILDEN
TILDEN & PROHIDNEY, P.L.
431 12th Street West, Ste. 204
Bradenton, FL  34205
T: (941) 243-3959
F: (800) 856-5332
service@tildenprohidney.com
*Counsel for Plaintiff Dr. Scott*

DOROTHY F. EASLEY, MS, JD BCS APPEALS
EASLEY APPELLATE PRACTICE PLLC
1200 Brickell Avenue, Suite 1950
Miami, Florida  33131
T: (305) 444-1599; 800-216-6185
administration@EasleyAppellate.com
(primary)
admin2@EasleyAppellate.com
(secondary)
Upload URL for secure service:
https://www.hightail.com/u/Easley-
Appellate-Practice-PLLC
www.easleyappellate.com

100 S Ashley Dr., Suite 2200                          *Appellate Counsel for Dr. Scott*
Tampa, FL 33602-5311
T: (813) 512-3224
F: (813) 512-3211
matthew.ransdell@jacksonlewis.com
*Trial and Appellate Counsel for EmCare*

JOHN MILLS BARR, ESQ.
LAW OFFICE OF JOHN M. BARR, P.C.
4105 Stuart Avenue
Richmond, VA 23221
T: (804) 269-5078
John.Barr@jmblawoffice.com
*Pro Hac Vice Counsel for EmCare*

iv

EASLEY APPELLATE PRACTICE, PLLC, 1200 Brickell Avenue, Suite 1950, Miami, Florida 33131   800-216-6185

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

Sam M. Gibbons U.S. Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, FL 33602
(813) 301-5400
www.flmd.uscourts.gov

Sheryl L. Loesch                                   Keshia M. Jones
Clerk                                         Tampa Division Manager

**DATE:** March 14, 2016

**TO:**   Clerk, U.S. Court of Appeals for the Eleventh Circuit

---

MICHELLE G. SCOTT,

      Plaintiff,

v.                                    Case No: 8:14-cv-1762-T-30TBM

SARASOTA DOCTORS HOSPITAL, INC. and JOHN
DOES 1-10,

      Defendants.

---

**U.S.C.A. Case No.:**          **UNKNOWN**

Enclosed are documents and information relating to an appeal in the above-referenced action.

- Honorable James S. Moody, Jr. , United States District Judge appealed from.

- Appeal filing fee was not paid. Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.  If you are filing informa pauperis, a request for leave to appeal in forma pauperis needs to be filed with the district court.

- Certified copy of Notice of Appeal, docket entries, judgment and/or Order appealed from.

SHERYL L. LOESCH, CLERK

By:       s/K. Meyer., Deputy Clerk

APPEAL, MEDIATION, SL DOC, TRLSET

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:14–cv–01762–JSM–TBM

Scott v. Sarasota Doctors Hospital, Inc. et al
Assigned to: Judge James S. Moody, Jr
Referred to: Magistrate Judge Thomas B. McCoun III
Case in other court:  11th Circuit, 16–10763–E
Cause: 28:1331 Fed. Question: Employment Discrimination

Date Filed: 07/21/2014
Date Terminated: 01/22/2016
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Dr. Michelle G. Scott**                              represented by   **Jay F. Romano**
Romano Law Center, PA
Suite 324A
2255 Glades Rd.
Boca Raton, FL 33431
561/271–1769
Fax: 561/299–3892
Email: jromanopa@yahoo.com
*TERMINATED: 04/13/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse Michael Tilden**
Tilden, Prohidney &DiPasquale, PL
Suite 204
431 Twelfth St W
Bradenton, FL 34205–7867
Email: jesse@tildenprohidney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dorothy F. Easley**
Easley Appellate Practice, PLLC
Suite 1950
1200 Brickell Ave.
Miami, FL 33131
800–216–6185
Fax: 305/675–4667
Email: easleyappellate@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sarasota Doctors Hospital, Inc.**                    represented by   **Tracey K. Jaensch**
*a Florida Corporation*                                Ford &Harrison, LLP

2

1

*doing business as*
Doctors Hospital of Sarasota

Suite 900
101 E Kennedy Blvd
Tampa, FL 33602
813/261–7800
Fax: 813/261–7899
Email: tjaensch@fordharrison.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Kent Miles**
Ford &Harrison, LLP
Suite 900
101 E Kennedy Blvd
Tampa, FL 33602
813–261–7816
Fax: 813–261–7899
Email: dmiles@fordharrison.com
*ATTORNEY TO BE NOTICED*

**Merry E. Lindberg**
Ford &Harrison, LLP
Suite 325
1450 Centrepark Blvd
West Palm Beach, FL 33401
561–345–7505
Fax: 561–345–7501
Email: mlindberg@fordharrison.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**West Florida Physician Network, LLC**
*a Florida LLC*
*TERMINATED: 10/26/2015*
*doing business as*
Healthcare America
*TERMINATED: 10/26/2015*

represented by **Tracey K. Jaensch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Kent Miles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Merry E. Lindberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**EmCare, Inc.**
*a Foreign Profit Corporation doing*
*business in the State of Florida*
*TERMINATED: 11/05/2015*

represented by **Jay P. Lechner**
Whittel &Melton
200 Central Ave Ste 400
St. Petersburg, FL 33701
727/823–0000
Fax: 352/556–4839
Email: lechnerj@thefllawfirm.com

*TERMINATED: 05/13/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John M. Barr**
Law Office of John M. Barr, PC
4105 Stuart Ave
Richmond, VA 23221
804/269–5078
Email: John.Barr@jmblawoffice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Logan Ransdell**
Jackson Lewis, PC
Suite 2200
100 S Ashley Dr
Tampa, FL 33607
813–512–3210
Fax: 813–512–3211
Email: matthew.ransdell@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Does 1–10**

**Mediator**

| | | |
|---|---|---|
| **Dale R. Sisco** | represented by | **Dale R. Sisco** |
| *TERMINATED: 05/14/2015* | | Sisco–Law |
| | | 1110 N Florida Ave |
| | | Tampa, FL 33602 |
| | | 813/224–0555 |
| | | Fax: 813/221–9736 |
| | | Email: dsisco@sisco–law.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Mediator**

| | | |
|---|---|---|
| **Peter J. Grilli** | represented by | **Peter John Grilli** |
| *TERMINATED: 07/07/2015* | | Peter J. Grilli, PA |
| | | 3001 W Azeele St |
| | | Tampa, FL 33609–3138 |
| | | 813/874–1002 |
| | | Fax: 813/874–1131 |
| | | Email: meditr@aol.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Mediator**

Case 8:14-cv-01762-JSM-TBM  Document 170  Filed 03/14/16  Page 5 of 67 PageID 4397
USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 10 of 131

APPENDIX 1

| | |
|---|---|
| **Mark Hanley**<br>*TERMINATED: 07/14/2015* | represented by **Mark A. Hanley**<br>Glenn Rasmussen Fogerty &Hooker, PA<br>P.O Box 3333<br>Tampa, FL 33601<br>813/229–3333 ext:307<br>Fax: 813/229–5946<br>Email: mhanley@babc.com<br>*TERMINATED: 01/25/2016*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/21/2014 | 1 | | COMPLAINT against EmCare, Inc., John Does 1–10, Sarasota Doctors Hospital, Inc., West Florida Physician Network, LLC with Jury Demand (Filing fee $ 400 receipt number TPA24629) filed by Michelle G. Scott. (Attachments: # 1 Civil Cover Sheet)(VCG) (Entered: 07/22/2014) |
| 07/23/2014 | 2 | | RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 – track 2. Issued by Deputy Clerk on 7/23/2014. (AR) (Entered: 07/23/2014) |
| 07/28/2014 | 3 | | NOTICE by Michelle G. Scott re 1 Complaint *SUMMONS TO BE ISSUED* (Attachments: # 1 Errata SUMMONS)(Romano, Jay) (Entered: 07/28/2014) |
| 08/01/2014 | 4 | | CERTIFICATE of interested persons and corporate disclosure statement by Michelle G. Scott. (Romano, Jay) (Entered: 08/01/2014) |
| 08/01/2014 | 5 | | **\*\*STRICKEN AS IMPROPER FILING OF DISCOVERY UNDER LOCAL RULE 3.03. COUNSEL NOTIFIED.\*\***NOTICE by Michelle G. Scott *rule 26 filings* (Romano, Jay) Modified on 8/4/2014 (DMS). (Entered: 08/01/2014) |
| 08/07/2014 | 6 | | SUMMONS issued as to EmCare, Inc., Sarasota Doctors Hospital, Inc., West Florida Physician Network, LLC. (DG) (Entered: 08/07/2014) |
| 08/29/2014 | 7 | | ANSWER and affirmative defenses to 1 Complaint by EmCare, Inc..(Lechner, Jay) (Entered: 08/29/2014) |
| 08/29/2014 | 8 | | CORPORATE Disclosure Statement by EmCare, Inc. (Lechner, Jay) Modified on 9/2/2014 to edit text.(VCG). (Entered: 08/29/2014) |
| 09/08/2014 | 9 | | MOTION for John M. Barr to appear pro hac vice by EmCare, Inc.. (Lechner, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 09/08/2014) |
| 09/10/2014 | 10 | | ENDORSED ORDER granting 9 motion to appear pro hac vice as to John M. Barr. Signed by Judge James S. Moody, Jr on 9/10/2014. (LN) (Entered: 09/10/2014) |
| 09/15/2014 | 11 | | ANSWER and affirmative defenses to 1 Complaint by West Florida Physician Network, LLC.(Jaensch, Tracey) Modified text on 9/16/2014 (KMB). (Entered: 09/15/2014) |
| 09/15/2014 | 12 | | ANSWER and affirmative defenses to 1 Complaint by Sarasota Doctors |

| | | |
|---|---|---|
| | | Hospital, Inc..(Jaensch, Tracey) Modified text on 9/16/2014 (KMB). (Entered: 09/15/2014) |
| 09/26/2014 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney John M. Barr, appearing on behalf of EmCare, Inc. (Filing fee $10 receipt number TPA25902.). (JNB) (Entered: 09/26/2014) |
| 10/20/2014 | 13 | *** STRICKEN – COUNSEL NOTIFIED TO REFILE AND USE THE PROPER EVENT *** NOTICE by Michelle G. Scott re 11 Answer to Complaint, 12 Answer to Complaint (Attachments: # 1 denial affirmative defenses, # 2 denial affirmative defense)(Romano, Jay) Modified text on 10/21/2014 (KMB). (Entered: 10/20/2014) |
| 10/20/2014 | 14 | CASE MANAGEMENT REPORT. (Jaensch, Tracey) (Entered: 10/20/2014) |
| 10/21/2014 | 15 | *** STRICKEN– Counsel notified to use the proper event *** RESPONSE re 11 Answer to Complaint, 12 Answer to Complaint filed by Michelle G. Scott. (Attachments: # 1 reply affirmative defenses, # 2 reply affirmative defenses)(Romano, Jay) Modified text on 10/21/2014 (KMB). (Entered: 10/21/2014) |
| 10/21/2014 | 16 | REPLY to affirmative defenses by Michelle G. Scott. (Attachments: # 1 reply, # 2 reply affirmative defenses)(Romano, Jay) (Entered: 10/21/2014) |
| 10/22/2014 | 17 | CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 4/16/2015, Dispositive motions due by 6/1/2015, Pretrial Conference set for THURSDAY, SEPTEMBER 3, 2015 at 9:30 AM in Tampa Courtroom 17 before Judge James S. Moody Jr., Jury Trial set for OCTOBER 2015 at 9:30 AM in Tampa Courtroom 17 before Judge James S. Moody Jr. Signed by Judge James S. Moody, Jr. on 10/22/2014. (AR) (Entered: 10/22/2014) |
| 10/26/2014 | 18 | **STRICKEN AS IMPROPER FILING OF DISCOVERY UNDER LOCAL RULE 3.03. COUNSEL NOTIFIED.** NOTICE by Michelle G. Scott *rule 26 disclosures* (Romano, Jay) Modified image and text on 10/27/2014 (KMB). (KMB). (Entered: 10/26/2014) |
| 10/27/2014 | 19 | CERTIFICATE of interested persons and corporate disclosure statement re 2 Related case order and track 2 notice by West Florida Physician Network, LLC. (Jaensch, Tracey) (Entered: 10/27/2014) |
| 10/27/2014 | 20 | CERTIFICATE of interested persons and corporate disclosure statement re 2 Related case order and track 2 notice by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 10/27/2014) |
| 12/04/2014 | 21 | NOTICE of *Attorney* Appearance by Merry E. Lindberg on behalf of Sarasota Doctors Hospital, Inc., West Florida Physician Network, LLC (Lindberg, Merry) (Entered: 12/04/2014) |
| 01/22/2015 | 22 | ORDER referring case to mediation and directing selection of a mediator on or before 2/23/2015. Mediation shall be conducted on or before 7/15/2015. Signed by Judge James S. Moody, Jr on 1/22/2015. (LN) (Entered: 01/22/2015) |
| 02/25/2015 | 23 | ORDER to show cause Re: parties' failure to schedule mediation. Show Cause Response due by 3/11/2015. Signed by Judge James S. Moody, Jr on |

| | | | |
|---|---|---|---|
| | | | 2/25/2015. (LN) (Entered: 02/25/2015) |
| 02/25/2015 | 24 | | RESPONSE TO ORDER TO SHOW CAUSE re 23 Order to show cause filed by Michelle G. Scott. (Romano, Jay) (Entered: 02/25/2015) |
| 02/25/2015 | 25 | | NOTICE of mediation conference/hearing to be held on April 24, 2015 at 10:00 am before Dale R. Sisco. (Jaensch, Tracey) (Entered: 02/25/2015) |
| 02/26/2015 | 26 | | ORDER appointing Dale R. Sisco as mediator in this action. Mediation Conference set for APRIL 24, 2015. Signed by Judge James S. Moody, Jr on 2/26/2015. (LN) (Entered: 02/26/2015) |
| 03/02/2015 | 27 | | RESPONSE TO ORDER TO SHOW CAUSE re 23 Order to show cause filed by EmCare, Inc.. (Lechner, Jay) (Entered: 03/02/2015) |
| 03/03/2015 | 28 | | *** Terminated– Counsel notified to re–file as a motion *** STIPULATION *of protective order regarding confidentiality of discovery materials* by EmCare, Inc.. (Lechner, Jay) Modified text on 3/4/2015 (KMB). (Entered: 03/03/2015) |
| 03/05/2015 | 29 | | First MOTION for Extension of Time to Complete Discovery *file of expert witness* by Michelle G. Scott. (Romano, Jay) (Entered: 03/05/2015) |
| 03/05/2015 | 30 | | ENDORSED ORDER denying without prejudice 29 Motion for Extension of Time to Complete Discovery. Denied without prejudice for failure to explain the relief requested and failure to indicate whether the motion is opposed. Signed by Judge James S. Moody, Jr on 3/5/2015. (LN) (Entered: 03/05/2015) |
| 03/05/2015 | 31 | | Amended MOTION for Extension of Time to Complete Discovery *filing of expert* by Michelle G. Scott. (Romano, Jay) Modified text on 3/5/2015 (KMB). (Entered: 03/05/2015) |
| 03/05/2015 | 32 | | ENDORSED ORDER granting 31 Opposed Amended Motion to Extend the Fiing of Expert Witness by Plaintiff. If Defendants believe they have been prejudiced by this brief extension, they may file an appropriate motion. Signed by Judge James S. Moody, Jr on 3/5/2015. (LN) (Entered: 03/05/2015) |
| 03/05/2015 | 33 | | RESPONSE in Opposition re 31 First MOTION for Extension of Time to Complete Discovery *filing of expert*, 29 First MOTION for Extension of Time to Complete Discovery *file of expert witness* filed by EmCare, Inc.. (Lechner, Jay) (Entered: 03/05/2015) |
| 03/09/2015 | 34 | | NOTICE by Michelle G. Scott *FILING OF EXPERT* (Romano, Jay) (Entered: 03/09/2015) |
| 03/09/2015 | 35 | | Joint MOTION for protective order by EmCare, Inc.. (Attachments: # 1 Text of Proposed Order)(Lechner, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 03/09/2015) |
| 03/10/2015 | 36 | | ENDORSED ORDER granting 35 Joint Motion to Approve and Enter Stipulated Protective Order. Signed by Judge James S. Moody, Jr on 3/10/2015. (LN) (Entered: 03/10/2015) |
| 03/10/2015 | 37 | | STIPULATED PROTECTIVE ORDER Regarding the Confidentiality of Discovery Materials. (See Order for details.) Signed by Judge James S. |

| | | | |
|---|---|---|---|
| | | | Moody, Jr on 3/10/2015. (LN) (Entered: 03/10/2015) |
| 03/16/2015 | 38 | | MOTION to Strike 34 Notice (Other) or Alternative, Extend Expert Discovery Deadline by EmCare, Inc.. (Attachments: # 1 Exhibit A through F)(Lechner, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 03/16/2015) |
| 03/17/2015 | 39 | | ORDER: Defendant EmCare, Inc.'s Motion to Strike Plaintiff's Expert Witness or, in the Alternative, to Extend the Expert Discovery Deadline (Dkt. 38) is granted in part as stated herein. Plaintiff Dr. Michelle G. Scott shall comply with the expert disclosure requirements specifically outlined in Rule 26(a)(2)(B) by March 23, 2015. Failure to serve Defendants with the full and complete expert disclosure by March 23, 2015 may result in the Court striking Plaintiff's expert. Defendants' expert disclosure deadline is extended to April 23, 2015. The discovery deadline is extended to May 7, 2015. All remaining deadlines are UNCHANGED. Signed by Judge James S. Moody, Jr on 3/17/2015. (LN) (Entered: 03/17/2015) |
| 04/12/2015 | 40 | | *** STRICKEN– document re–filed using proper event at DE# 41 *** First MOTION for Extension of Time to Complete Discovery *BY 30 DAYS EXTENSION*, MOTION for JAY ROMANO ROMANO LAW CENTER PA to withdraw as attorney by Michelle G. Scott. (Romano, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. Modified text on 4/13/2015 (KMB). (Entered: 04/12/2015) |
| 04/12/2015 | 41 | | NOTICE by Michelle G. Scott *OF CHARGING LIEN* (Romano, Jay) (Entered: 04/12/2015) |
| 04/12/2015 | 42 | | First MOTION for Extension of Time to Complete Discovery *30 days*, MOTION for jay romano romano law center pa to withdraw as attorney by Michelle G. Scott. (Romano, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 04/12/2015) |
| 04/12/2015 | 43 | | Amended MOTION for JAY ROMANO ROMANO LAW CENTERPA to withdraw as attorney *30 DAYS*, MOTION for Extension of Time to Complete Discovery by Michelle G. Scott. (Romano, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 04/12/2015) |
| 04/12/2015 | 44 | | First MOTION for jay romano romano law centerpa to withdraw as attorney by Michelle G. Scott. (Romano, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 04/12/2015) |
| 04/13/2015 | 45 | | **ENDORSED ORDER striking 40 Motion for Extension of Time to Complete Discovery. Signed by Judge James S. Moody, Jr on 4/13/2015. (LN)** (Entered: 04/13/2015) |
| 04/13/2015 | 46 | | **ENDORSED ORDER denying as moot 42 Motion for Extension of Time to Complete Discovery; denying as moot 42 Motion to Withdraw as Attorney. Signed by Judge James S. Moody, Jr on 4/13/2015. (LN)** (Entered: 04/13/2015) |
| 04/13/2015 | 47 | | **ENDORSED ORDER denying as moot 43 Motion to Withdraw as Attorney ; denying as moot 43 Motion for Extension of Time to Complete Discovery. Signed by Judge James S. Moody, Jr on 4/13/2015. (LN)** (Entered: 04/13/2015) |

| 04/13/2015 | 48 | | **ENDORSED ORDER denying without prejudice for failure to adequately comply with Local Rule 3.01(g) 44 Motion to Withdraw as Attorney. Signed by Judge James S. Moody, Jr on 4/13/2015. (LN)** (Entered: 04/13/2015) |
|---|---|---|---|
| 04/13/2015 | 49 | | Unopposed MOTION for JAY ROMANO ROMANO LAW CENTER PA to withdraw as attorney , MOTION for Extension of Time to Complete Discovery *by 30 days* by Michelle G. Scott. (Romano, Jay) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 04/13/2015) |
| 04/13/2015 | 50 | | **ORDER granting 49 Motion to Withdraw as Attorney. Attorney Jay F. Romano terminated. Plaintiff's record address for future filings is: 13203 Palmers Creek Terrace, Lakewood Ranch, Florida 34202. A thirty (30) day extension of the discovery period is granted so that depositions and mediation may be reset. The discovery deadline is extended through June 8, 2015. The mediation deadline is extended through June 15, 2015. The parties are directed to confer and file an Amended Notice of Scheduled Mediation on or before May 15, 2015. All other deadlines remain UNCHANGED. Signed by Judge James S. Moody, Jr on 4/13/2015. (LN)** (Entered: 04/13/2015) |
| 04/20/2015 | 51 | | NOTICE of Appearance by Jesse Michael Tilden on behalf of Michelle G. Scott (Tilden, Jesse) (Entered: 04/20/2015) |
| 05/01/2015 | 52 | | *** Terminated – Discovery should not be filed pursuant to Local Rule 3.03, Discovery Notice attached *** NOTICE by Michelle G. Scott *of Service of Interrogatories* (Tilden, Jesse) Text Modified, Additional attachment added (#1 Discovery Notice) and NEF regenerated on 5/4/2015 (KMB). (Entered: 05/01/2015) |
| 05/12/2015 | 53 | | MOTION to Substitute Attorney by EmCare, Inc.. (Ransdell, Matthew) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 05/12/2015) |
| 05/13/2015 | 54 | | **ENDORSED ORDER granting 53 Motion to Substitute Attorney. Attorney Jay P. Lechner terminated. Signed by Judge James S. Moody, Jr on 5/13/2015. (LN)** (Entered: 05/13/2015) |
| 05/13/2015 | 55 | | Joint MOTION to Continue *Trial and to Reset Pretrial Deadlines* by Sarasota Doctors Hospital, Inc., West Florida Physician Network, LLC. (Lindberg, Merry) (Entered: 05/13/2015) |
| 05/14/2015 | 56 | | **ENDORSED ORDER granting 55 Motion to Continue Deadlines. Signed by Judge James S. Moody, Jr on 5/14/2015. (LN)** (Entered: 05/14/2015) |
| 05/14/2015 | 57 | | **AMENDED CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 7/15/2015. Dispositive motions due by 9/11/2015. Pretrial Conference set for WEDNESDAY, 12/2/2015 at 9:15 AM in Tampa Courtroom 17 before Judge James S. Moody Jr. *** Jury Trial set for JANUARY 2016 *** Conduct mediation hearing by JULY 15, 2015. Signed by Judge James S. Moody, Jr on 5/14/2015. (LN)** (Entered: 05/14/2015) |
| 05/14/2015 | 58 | | NOTICE of mediation conference/hearing to be held on 7/1/2015 at 10:30 |

| | | before Peter J. Grilli. (Jaensch, Tracey) (Entered: 05/14/2015) |
|---|---|---|
| 05/14/2015 | 59 | **ORDER appointing PETER J. GRILLI as mediator in this action. Mediation Conference set for JULY 1, 2015. Signed by Judge James S. Moody, Jr on 5/14/2015. (LN)** (Entered: 05/14/2015) |
| 05/21/2015 | 60 | NOTICE by Romano Law Center Pa *charging lien for FEES* (Romano, Jay) (Entered: 05/21/2015) |
| 06/30/2015 | 61 | AMENDED NOTICE of mediation conference/hearing to be held on 07/14/2015 at 10:30 am before Mark A. Hanley. (Jaensch, Tracey) Modified text on 7/1/2015 (KMM). (Entered: 06/30/2015) |
| 07/06/2015 | 62 | **AMENDED ORDER appointing MARK HANLEY as mediator in this action. Mediation Conference set for JULY 14, 2015. Signed by Judge James S. Moody, Jr on 7/6/2015. (LN)** (Entered: 07/06/2015) |
| 07/14/2015 | 63 | MEDIATION report Hearing held on July 14, 2015. Hearing outcome: IMPASSE. (Hanley, Mark) (Entered: 07/14/2015) |
| 09/11/2015 | 64 | MOTION for summary judgment by Sarasota Doctors Hospital, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(Jaensch, Tracey) (Entered: 09/11/2015) |
| 09/11/2015 | 65 | MOTION for Extension of Time to File Motion for Summary Judgment by West Florida Physician Network, LLC. (Jaensch, Tracey) (Entered: 09/11/2015) |
| 09/11/2015 | 66 | MOTION for summary judgment *and Incorporated Memorandum of Law in Support Thereof* by EmCare, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3(a), # 4 Exhibit 3(b), # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12(a), # 14 Exhibit 12(b), # 15 Exhibit 13)(Ransdell, Matthew) (Entered: 09/11/2015) |
| 09/11/2015 | 67 | **ENDORSED ORDER granting 65 Motion for Extension of Time to File. Signed by Judge James S. Moody, Jr on 9/11/2015. (JG)** (Entered: 09/11/2015) |
| 09/15/2015 | 68 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Deposition Transcript of Dr. Michelle Scott* (Attachments: # 1 Exhibit Deposition of Michelle Scott)(Lindberg, Merry) (Entered: 09/15/2015) |
| 09/15/2015 | 69 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Deposition Transcript of Theresa Levering* (Attachments: # 1 Exhibit Deposition Transcript of Theresa Levering)(Lindberg, Merry) (Entered: 09/15/2015) |
| 09/15/2015 | 70 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Deposition Transcript of Robert Meade* (Attachments: # 1 Exhibit Deposition Transcript of Robert Meade)(Lindberg, Merry) (Entered: 09/15/2015) |

| 09/15/2015 | 71 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Deposition Transcript of Dr. Michael Schandorf* (Attachments: # 1 Exhibit Deposition Transcript of Dr. Michael Schandorf)(Lindberg, Merry) (Entered: 09/15/2015) |
|---|---|---|
| 09/15/2015 | 72 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Deposition Transcript of Dr. Joel Stern* (Attachments: # 1 Exhibit Deposition Transcript of Dr. Joel Stern)(Lindberg, Merry) (Entered: 09/15/2015) |
| 09/15/2015 | 73 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Deposition Transcript of Ted Haumesser* (Attachments: # 1 Exhibit Deposition of Ted Haumesser)(Lindberg, Merry) (Entered: 09/15/2015) |
| 09/15/2015 | 74 | NOTICE by Sarasota Doctors Hospital, Inc. re 64 MOTION for summary judgment *of Filing Plaintiff's Responses to Defendant EmCare's Interrogatories* (Attachments: # 1 Exhibit Plaintiff's Responses to Defendant EmCare's Interrogatories)(Lindberg, Merry) (Entered: 09/15/2015) |
| 09/22/2015 | 75 | MOTION for summary judgment by West Florida Physician Network, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Lindberg, Merry) (Entered: 09/22/2015) |
| 09/23/2015 | 76 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant EmCare, Inc.'s and Defendant Doctors Hospital, Inc.'s Motions for Summary Judgment* by Michelle G. Scott. (Tilden, Jesse) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 09/23/2015) |
| 09/24/2015 | 77 | **ENDORSED ORDER granting 76 Motion for Extension of Time to File Response to Defendant EmCare, Inc.'s and Defendant Doctors Hospital, Inc.'s Motions for Summary Judgment. Response due by 10/5/2015. Signed by Judge James S. Moody, Jr on 9/24/2015. (LN) (Entered: 09/24/2015)** |
| 10/05/2015 | 78 | RESPONSE in Opposition re 64 MOTION for summary judgment *by Sarasota Doctor's Hospital* filed by Michelle G. Scott. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Tilden, Jesse) (Entered: 10/05/2015) |
| 10/05/2015 | 79 | MEMORANDUM in opposition re 66 Motion for summary judgment *by EmCare, Inc.* filed by Michelle G. Scott. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Tilden, Jesse) (Entered: 10/05/2015) |
| 10/06/2015 | 80 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant West Florida Physician Network, LLC's Motion for Summary Judgment* by Michelle G. Scott. (Tilden, Jesse) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 10/06/2015) |
| 10/06/2015 | 81 | **ENDORSED ORDER granting 80 Plaintiff's Motion for Extension of Time to File Response to Defendant West Florida Physician Network, LLC's Motion for Summary Judgment. Response due by 10/16/2015. Signed by Judge James S. Moody, Jr on 10/6/2015. (LN) (Entered:** |

| | | | |
|---|---|---|---|
| | | | 10/06/2015) |
| 10/07/2015 | 82 | | Unopposed MOTION for leave to file Reply to Plaintiff's Memorandum in Opposition to EmCare's Motion for Summary Judgment and Incorporated Memorandum of Law in Support thereof by EmCare, Inc.. (Ransdell, Matthew) (Entered: 10/07/2015) |
| 10/08/2015 | 83 | | **ENDORSED ORDER granting 82 Motion for Leave to File Reply. Reply due on October 16, 2015, and shall not exceed five (5) pages. Signed by Judge James S. Moody, Jr on 10/8/2015. (LN)** (Entered: 10/08/2015) |
| 10/15/2015 | 84 | | Second MOTION for Extension of Time to File Response/Reply *to Defendant West Florida Physician Network, LLC's Motion for Summary Judgment* by Michelle G. Scott. (Tilden, Jesse) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 10/15/2015) |
| 10/15/2015 | 85 | | **ENDORSED ORDER granting 84 Plaintiff's Motion for Extension of Time to File Response to Defendant West Florida Physician Network, LLC's Motion for Summary Judgment. Response due by 10/23/2015. NO FURTHER EXTENSIONS WILL BE GRANTED. Signed by Judge James S. Moody, Jr on 10/15/2015. (LN)** (Entered: 10/15/2015) |
| 10/16/2015 | 86 | | RESPONSE re 79 Memorandum in opposition *to Defendant's Motion for Summary Judgment* filed by EmCare, Inc.. (Ransdell, Matthew) (Entered: 10/16/2015) |
| 10/23/2015 | 87 | | Joint MOTION to Dismiss Defendant West Florida Physicians Network, LLC *with Prejudice* by Michelle G. Scott. (Tilden, Jesse) (Entered: 10/23/2015) |
| 10/26/2015 | 88 | | **ENDORSED ORDER granting 87 Stipulated Motion to Dismiss Defendant West Florida Physician Network, LLC with Prejudice. The Clerk shall terminate this Defendant. Signed by Judge James S. Moody, Jr on 10/26/2015. (LN)** (Entered: 10/26/2015) |
| 10/26/2015 | 89 | | **ENDORSED ORDER terminating as moot 75 Motion for summary judgment. Signed by Judge James S. Moody, Jr on 10/26/2015. (LN)** (Entered: 10/26/2015) |
| 11/05/2015 | 90 | 19 | **ORDER: Defendant Sarasota Doctors Hospital, Inc.'s Motion for Summary Judgment 64 is denied. EmCare, Inc.'s Motion for Summary Judgment 66 is granted. The Clerk is directed to enter final judgment in favor of Emcare, Inc. and against Plaintiff. Signed by Judge James S. Moody, Jr on 11/5/2015. (LN)** (Entered: 11/05/2015) |
| 11/05/2015 | 91 | 45 | JUDGMENT in favor of EmCare, Inc. against Michelle G. Scott (Signed by Deputy Clerk) (KMM) (Entered: 11/05/2015) |
| 11/05/2015 | 92 | | **ENDORSED ORDER: Any motions in limine are due no later than two weeks before the pretrial conference. The parties are limited to filing only one motion in limine that includes each ground for the exclusion of evidence. Signed by Judge James S. Moody, Jr on 11/5/2015. (LN)** (Entered: 11/05/2015) |
| 11/17/2015 | 93 | | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION for Extension of Time to File Motion in Limine by Sarasota Doctors Hospital, Inc.. (Lindberg, Merry) Modified relief on 11/17/2015 (KMM). (Entered: 11/17/2015) |
| 11/17/2015 | 94 | | **ENDORSED ORDER granting 93 Motion for Extension of Time to File Motions in Limine. Extension granted through November 24, 2015. Signed by Judge James S. Moody, Jr on 11/17/2015. (LN)** (Entered: 11/17/2015) |
| 11/19/2015 | 95 | | MOTION for Taxation of Costs *and Incorporated Memorandum of Law* by EmCare, Inc.. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3)(Ransdell, Matthew) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 11/19/2015) |
| 11/19/2015 | 96 | | PROPOSED BILL OF COSTS *Itemization of Costs in Bill of Costs* by EmCare, Inc.. (Ransdell, Matthew) (Entered: 11/19/2015) |
| 11/20/2015 | 97 | | **ENDORSED ORDER: Plaintiff shall file a notice with the Court on or before November 27, 2015, indicating if she plans on filing any opposition to Defendant's Motion to Tax Costs 95 . Signed by Judge James S. Moody, Jr on 11/20/2015. (LN)** (Entered: 11/20/2015) |
| 11/24/2015 | 98 | | MOTION in limine regarding Exclusion of Certain Evidence at Trial by Sarasota Doctors Hospital, Inc.. (Attachments: # 1 Exhibit A)(Lindberg, Merry) (Entered: 11/24/2015) |
| 11/24/2015 | 99 | | MOTION for judgment as a matter of law by Sarasota Doctors Hospital, Inc.. (Lindberg, Merry) (Entered: 11/24/2015) |
| 11/24/2015 | 100 | | JOINT PRETRIAL statement by Michelle G. Scott. (Tilden, Jesse) Modified on 11/25/2015 to edit text. (AG) (Entered: 11/24/2015) |
| 12/01/2015 | 101 | | **ORDER: Defendant Emcare, Inc.'s Motion for Taxation of Costs 95 and Proposed Bill of Costs 96 are granted. The Clerk of Court is directed to enter a Bill of Costs in the amount of $3,202.10 in Defendant Emcare, Inc.'s favor and against Plaintiff for taxable costs. This amount shall accrue interest at the relevant federal statutory rate. Signed by Judge James S. Moody, Jr on 12/1/2015. (LN)** (Entered: 12/01/2015) |
| 12/02/2015 | 102 | | BILL OF COSTS taxed against Michelle G. Scott in the amount of $3,202.10. Signed by Deputy Clerk. (AR) (Entered: 12/02/2015) |
| 12/02/2015 | 103 | | Minute Entry. Proceedings held before Judge James S. Moody, Jr.: PRETRIAL CONFERENCE held on 12/2/2015. Court Reporter: Melissa Pierson (AR) (Entered: 12/02/2015) |
| 12/07/2015 | 104 | | Unopposed MOTION for Extension of Time to File Response/Reply *to Sarasota Doctors Hospital, Inc.'s Motion for Judgment as a Matter of Law on Plaintiff's Claim for Reinstatement or Front Pay* by Michelle G. Scott. (Tilden, Jesse) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 12/07/2015) |
| 12/08/2015 | 105 | | **ENDORSED ORDER granting 104 Plaintiff's Motion for Extension of Time to File Response to Sarasota Doctors Hospital, Inc.'s Motion for Judgment as a Matter of Law on Plaintiff's Claim for Reinstatement or Front Pay. Response due by 12/15/2015. Signed by Judge James S.** |

| | | | |
|---|---|---|---|
| | | | **Moody, Jr on 12/8/2015. (LN)** (Entered: 12/08/2015) |
| 12/08/2015 | 106 | | RESPONSE in Opposition re 98 MOTION in limine regarding Exclusion of Certain Evidence at Trial filed by Michelle G. Scott. (Tilden, Jesse) (Entered: 12/08/2015) |
| 12/09/2015 | 107 | | NOTICE of hearing on 98 Motion in Limine. Motion Hearing set for WEDNESDAY, 12/16/2015 at 2:00 PM in Tampa Courtroom 17 before Judge James S. Moody Jr. Time reserved: 30 minutes. (LN) (Entered: 12/09/2015) |
| 12/11/2015 | 108 | | **TRIAL CALENDAR for trial term January 2016. Jury Trial set for DATE CERTAIN – TUESDAY, JANUARY 19, 2016 at 9:00 AM in Tampa Courtroom 17 before Judge James S. Moody Jr. Signed by Deputy Clerk on 12/11/2015. (AR)** (Entered: 12/11/2015) |
| 12/15/2015 | 109 | | RESPONSE in Opposition re 99 MOTION for judgment as a matter of law *on Plaintiff's Claim for Reinstatement or Front Pay* filed by Michelle G. Scott. (Tilden, Jesse) (Entered: 12/15/2015) |
| 12/16/2015 | 110 | | **ENDORSED ORDER denying without prejudice as premature 99 Motion for Judgment as a Matter of Law. Signed by Judge James S. Moody, Jr on 12/16/2015. (LN)** (Entered: 12/16/2015) |
| 12/16/2015 | 111 | | **ENDORSED ORDER granting in part and denying in part for reasons stated on the record 98 Defendant's Motion in Limine. Signed by Judge James S. Moody, Jr on 12/16/2015. (LN)** (Entered: 12/16/2015) |
| 12/16/2015 | 112 | | Minute Entry. Proceedings held before Judge James S. Moody, Jr.: MOTION HEARING held on 12/16/2015 re 99 MOTION for judgment as a matter of law filed by Sarasota Doctors Hospital, Inc. and 98 MOTION in limine regarding Exclusion of Certain Evidence at Trial filed by Sarasota Doctors Hospital, Inc. Court Reporter: Melissa Pierson (AR) (Entered: 12/16/2015) |
| 12/18/2015 | 113 | | Exhibit List *Amended Joint Trial Exhibit List (Amended as to Defendant's Exhibit H only)* by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 12/18/2015) |
| 12/23/2015 | 114 | | Witness List by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 12/23/2015) |
| 12/23/2015 | 115 | | NOTICE of Appearance by Daniel Kent Miles on behalf of Sarasota Doctors Hospital, Inc., West Florida Physician Network, LLC (Miles, Daniel) (Entered: 12/23/2015) |
| 01/12/2016 | 116 | | Unopposed MOTION to allow electronic equipment, specifically Cell phones, Computers, Tablets, Projector, Peripherals by Michelle G. Scott. (Attachments: # 1 Exhibit Proposed Order)(Tilden, Jesse) (Entered: 01/12/2016) |
| 01/12/2016 | 117 | | **ENDORSED ORDER denying without prejudice for lack of specificity 116 Motion to allow electronic equipment. The motion shall list the make and model numbers of the equipment requested along with the name of the person who will be bringing the stated items into the courthouse. Signed by Judge James S. Moody, Jr on 1/12/2016. (LN)** |

| | | (Entered: 01/12/2016) |
|---|---|---|
| 01/13/2016 | 118 | Unopposed MOTION to allow electronic equipment, specifically *personal electronic devises for Dr. Michael Schandorf, Dr. Joel Stern and Ted Haumesser* by EmCare, Inc.. (Ransdell, Matthew) (Entered: 01/13/2016) |
| 01/13/2016 | 119 | **ORDER granting 118 Motion to allow electronic equipment. Signed by Judge James S. Moody, Jr on 1/13/2016. (LN)** (Entered: 01/13/2016) |
| 01/13/2016 | 120 | Amended MOTION to allow electronic equipment, specifically Cell Phones (iPhone 4, 6, 6s), Computers (2 MacBook Pro, 13"), 2 iPads Minis, 2 Mice, Power Cords for Phones and Computers by Michelle G. Scott. (Attachments: # 1 Exhibit "A" – Proposed Order)(Tilden, Jesse) (Entered: 01/13/2016) |
| 01/14/2016 | 121 | **ORDER granting 120 Motion to allow electronic equipment. (Copy to be provided to U. S. Marshal.) Signed by Judge James S. Moody, Jr on 1/14/2016. (LN)** (Entered: 01/14/2016) |
| 01/14/2016 | 122 | MOTION to allow electronic equipment, specifically Laptops, cellular phones and power cords by Sarasota Doctors Hospital, Inc.. (Attachments: # 1 Exhibit A)(Miles, Daniel) (Entered: 01/14/2016) |
| 01/14/2016 | 123 | **ORDER granting 122 Motion to allow electronic equipment. Signed by Judge James S. Moody, Jr on 1/14/2016. (LN)** (Entered: 01/14/2016) |
| 01/18/2016 | 124 | MOTION to allow electronic equipment, specifically cellular phone by Sarasota Doctors Hospital, Inc.. (Attachments: # 1 Exhibit A)(Miles, Daniel) (Entered: 01/18/2016) |
| 01/18/2016 | 125 | Proposed Jury Instructions by Michelle G. Scott. (Tilden, Jesse) (Entered: 01/18/2016) |
| 01/18/2016 | 126 | Proposed Voir Dire by Michelle G. Scott. (Tilden, Jesse) (Entered: 01/18/2016) |
| 01/18/2016 | 127 | Proposed Voir Dire by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 01/18/2016) |
| 01/18/2016 | 128 | Second Amended Joint Exhibit List by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) Modified text on 1/19/2016 (KMM). (Entered: 01/18/2016) |
| 01/19/2016 | 129 | **ORDER granting 124 Motion to allow electronic equipment. Signed by Judge James S. Moody, Jr on 1/19/2016. (LN)** (Entered: 01/19/2016) |
| 01/19/2016 | 130 | Minute Entry. Proceedings held before Judge James S. Moody, Jr.: JURY TRIAL Selection and Day One of Trial held on 1/19/2016. Court Reporter: Lynann Nicely (AR) (Entered: 01/19/2016) |
| 01/20/2016 | | DE# 131 is a Sealed Document. (KMM) (Entered: 01/20/2016) |
| 01/20/2016 | 132 | Minute Entry. Proceedings held before Judge James S. Moody, Jr.: JURY TRIAL held (DAY 2) on 1/20/2016. Court Reporter: Lynann Nicely (AR) (Entered: 01/20/2016) |
| 01/21/2016 | 133 | MOTION for judgment as a matter of law by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 01/21/2016) |

| 01/21/2016 | 134 |    | Minute Entry. Proceedings held before Judge James S. Moody, Jr.: JURY TRIAL (Day 3) held on 1/21/2016. Court Reporter: Lynann Nicely (AR) (Entered: 01/21/2016) |
| 01/22/2016 | 135 |    | Minute Entry. Proceedings held before Judge James S. Moody, Jr: JURY TRIAL (Day 4) completed on 1/22/2016. Court Reporter: Lynann Nicely (RFK) (Entered: 01/22/2016) |
| 01/22/2016 | 136 |    | JURY VERDICT. (RFK) (Entered: 01/22/2016) |
| 01/22/2016 | 137 |    | Second Amended Joint Exhibit List by Michelle G. Scott and Sarasota Doctors Hospital, Inc. (RFK) Modified text on 1/25/2016 (KMM). (Entered: 01/22/2016) |
| 01/22/2016 | 138 |    | COURT'S EXHIBIT LIST. (RFK) (Entered: 01/22/2016) |
| 01/22/2016 | 139 |    | Jury Instructions. (RFK) (Entered: 01/22/2016) |
| 01/22/2016 | 140 | 47 | JUDGMENT in favor of Sarasota Doctors Hospital, Inc. against Michelle G. Scott (Signed by Deputy Clerk). (RFK) (Entered: 01/22/2016) |
| 01/22/2016 | 141 | 48 | **ENDORSED ORDER: As a verdict has been delivered and Judgment has been entered, the Clerk is directed to close this case. Signed by Judge James S. Moody, Jr on 1/22/2016. (LN)** (Entered: 01/22/2016) |
| 01/22/2016 | 142 |    | NOTICE of Exhibits placed in Exhibit Room [1 envelope and 1 folder– jury trial] (KMM) (Entered: 01/25/2016) |
| 01/25/2016 | 143 |    | MOTION for Mark A. Hanley, Mediator to withdraw as attorney by Mark Hanley. (Hanley, Mark) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 01/25/2016) |
| 01/25/2016 | 144 |    | **ENDORSED ORDER granting 143 Motion to Withdraw as Attorney. Mediator Mark A. Hanley terminated. Signed by Judge James S. Moody, Jr on 1/25/2016. (LN)** (Entered: 01/25/2016) |
| 02/03/2016 | 145 |    | MOTION for Taxation of Costs by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 02/03/2016) |
| 02/03/2016 | 146 |    | PROPOSED BILL OF COSTS by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 02/03/2016) |
| 02/04/2016 | 147 |    | **ENDORSED ORDER denying without prejudice for failure to comply with Local Rule 3.01(g) 145 Motion for Taxation of Costs. Signed by Judge James S. Moody, Jr on 2/4/2016. (LN)** (Entered: 02/04/2016) |
| 02/18/2016 | 148 |    | Amended MOTION for Taxation of Costs *Against Plaintiff Dr. Michelle G. Scott* by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) Motions referred to Magistrate Judge Thomas B. McCoun III. (Entered: 02/18/2016) |
| 02/18/2016 | 149 |    | PROPOSED BILL OF COSTS by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 02/18/2016) |
| 02/19/2016 | 150 |    | *** Stricken– Image Removed– Counsel notified that Transcripts are not to be filed by Counsel *** NOTICE by Michelle G. Scott *of Filing Trial Transcript* (Attachments: # 1 Exhibit "A" – Transcript of Trial Day One, # 2 |

| | | |
|---|---|---|
| | | Exhibit "B" – Transcript of Trial Day Two, # 3 Exhibit "C" – Transcript of Trial Day Three)(Tilden, Jesse) Modified text, image and NEF regenerated on 2/23/2016 (KMM). (Entered: 02/19/2016) |
| 02/19/2016 | 151 | NOTICE of *Appellate Co–Counsel Appearance* Appearance by Dorothy F. Easley on behalf of Michelle G. Scott (Easley, Dorothy) (Entered: 02/19/2016) |
| 02/19/2016 | 152 | MOTION for New Trial by Michelle G. Scott. (Tilden, Jesse) (Entered: 02/19/2016) |
| 02/20/2016 | 153 | *** Terminated– Counsel notified that the complete Notice of Appeal with exhibits was re–filed at DE# 154 ** NOTICE OF APPEAL as to 140 Judgment, 91 Judgment, 90 Order on motion for summary judgment by Michelle G. Scott. Filing fee not paid. (Easley, Dorothy) Modified text on 2/22/2016 (KMM). (Entered: 02/20/2016) |
| 02/20/2016 | 154 | NOTICE OF APPEAL as to 140 Judgment, 91 Judgment, 90 Order on motion for summary judgment by Michelle G. Scott. Filing fee not paid. (Easley, Dorothy) (Entered: 02/20/2016) |
| 02/22/2016 | 155 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 154 Notice of appeal. (KMM) (Entered: 02/22/2016) |
| 02/22/2016 | 156 | TRANSCRIPT information form filed by Michelle G. Scott re 154 Notice of appeal. (Easley, Dorothy) (Entered: 02/22/2016) |
| 02/23/2016 | 157 | TRANSCRIPT of Trial Day 1 held on 1/19/2016 before Judge Moody re 154 Notice of appeal. Court Reporter Lynann Nicely, Telephone number (813) 301–5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/15/2016, Redacted Transcript Deadline set for 3/25/2016, Release of Transcript Restriction set for 5/23/2016. (LN) (Entered: 02/23/2016) |
| 02/23/2016 | 158 | TRANSCRIPT of Trial Day 2 held on 1/20/2016 before Judge Moody re 154 Notice of appeal. Court Reporter Lynann Nicely, Telephone number (813) 301–5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/15/2016, Redacted Transcript Deadline set for 3/25/2016, Release of Transcript Restriction set for 5/23/2016. (LN) (Entered: 02/23/2016) |
| 02/23/2016 | 159 | TRANSCRIPT of Trial Day 3 (Partial) held on 1/21/2016 before Judge Moody re 154 Notice of appeal. Court Reporter Lynann Nicely, Telephone number (813) 301–5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/15/2016, Redacted Transcript Deadline set for 3/25/2016, Release of Transcript Restriction set for 5/23/2016. (LN) Modified text on 3/1/2016 |

| | | | |
|---|---|---|---|
| | | | (KMM). (Entered: 02/23/2016) |
| 02/23/2016 | 160 | | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Lynann Nicely. (LN) (Entered: 02/23/2016) |
| 02/25/2016 | | | USCA appeal fees received $505 receipt number TPA035152 re 154 Notice of appeal filed by Michelle G. Scott. (JEQ) (Entered: 02/25/2016) |
| 02/25/2016 | | | TRANSMITTAL to USCA forwarding Docket Entry of Receipt for Appeal fee. re 154 Notice of appeal (KMM) (Entered: 02/25/2016) |
| 03/01/2016 | 161 | | TRANSCRIPT of Trial Day 3 (complete) held on 1/21/2016 before Judge Moody. Court Reporter Lynann Nicely,Telephone number (813) 301–5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/22/2016, Redacted Transcript Deadline set for 4/1/2016, Release of Transcript Restriction set for 5/31/2016. (LN) (Entered: 03/01/2016) |
| 03/01/2016 | 162 | | TRANSCRIPT of Trial Day 4 held on 1/22/2016 before Judge Moody. Court Reporter Lynann Nicely,Telephone number (813) 301–5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/22/2016, Redacted Transcript Deadline set for 4/1/2016, Release of Transcript Restriction set for 5/31/2016. (LN) (Entered: 03/01/2016) |
| 03/01/2016 | 163 | | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Lynann Nicely. (LN) (Entered: 03/01/2016) |
| 03/03/2016 | 164 | | COURT REPORTER ACKNOWLEDGMENT by Lynann Nicely re 154 Notice of appeal Estimated transcript filing date: 2/26/16. (LN) (Entered: 03/03/2016) |
| 03/04/2016 | 165 | | MEMORANDUM in opposition re 152 Motion for New Trial filed by Sarasota Doctors Hospital, Inc.. (Jaensch, Tracey) (Entered: 03/04/2016) |
| 03/07/2016 | 166 | 50 | **ORDER denying 152 Plaintiff's Motion for New Trial. Signed by Judge James S. Moody, Jr on 3/7/2016. (LN)** (Entered: 03/07/2016) |
| 03/07/2016 | 167 | | **ORDER: Defendant Sarasota Doctors Hospital, Inc.'s Amended** |

| | | | Verified Motion to Tax Costs against Plaintiff ( **148 is granted in part and denied in part. The Clerk of Court is directed to enter a Bill of Costs in the amount of $3,042.84 in Defendant Sarasota Doctors Hospital, Inc.'s favor and against Plaintiff for taxable costs. This amount shall accrue interest at the relevant federal statutory rate. Signed by Judge James S. Moody, Jr on 3/7/2016. (LN)** (Entered: 03/07/2016) |
| 03/08/2016 | 168 | | BILL OF COSTS taxed against Plaintiff, Dr. Michelle G. Scott, in the amount of $3,042.84. Signed by Deputy Clerk. (AR) (Entered: 03/08/2016) |
| 03/11/2016 | 169 | 53 | NOTICE OF APPEAL as to 140 Judgment, 91 Judgment, 141 Order, 166 Order on Motion for New Trial, 90 Order on motion for summary judgment by Michelle G. Scott. Filing fee not paid. (Easley, Dorothy) (Entered: 03/11/2016) |

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

DR. MICHELLE G. SCOTT,

           Plaintiff,

v.

SARASOTA DOCTORS HOSPITAL, INC.,
A FLORIDA CORPORATION D/B/A
AS DOCTORS HOSPITAL OF SARASOTA;
AND
WEST FLORIDA PHYSICIAN NETWORK, LLC.
A FLORIDA LLC
D/B/A **HEALTHCARE AMERICA**,
AND **EMCARE, INC**, a Foreign Profit
Corporation doing business in the State of Florida;
AND JOHN DOES 1-10.

           Defendants.

_____/

Case No.: 8:14 CV 1762 T30 TBM

**VERIFIED COMPLAINT AND
DEMAND FOR
TRIAL BY JURY**

## NATURE OF ACTION

Plaintiff, **DR. MICHELLE G. SCOTT,** by and through her undersigned

attorney, referred to as (the "Plaintiff" or "Dr. Scott") sues Defendants

SARASOTA DOCTORS HOSPITAL, INC., A FLORIDA CORPORATION D/B/A

AS DOCTORS HOSPITAL OF SARASOTA (hereinafter referred to as

"Doctors Hospital" or "Defendant Hospital") AND WEST FLORIDA PHYSICIAN

NETWORK, LLC.

TPA-2 4629
$400

A FLORIDA LLC D/B/A HEALTHCARE AMERICA, ("Defendant HCA")  and

 EMCARE, INC., a Foreign Profit Corporation doing business in the State of Florida

("Defendant EmCare"); and  JOHN DOES 1-10 ("John Does")

for damages in EXCESS of  $ 50,000  for violations of her civil rights

occurring during her employment relationship with Defendants.  The Plaintiff sues under

Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. Section

2000e *et seq.*  ("Title VII"), the Civil Rights Act of 1871, as amended,

and the Florida Civil Rights Act of 1992, Section

760.01 *et seq.,* Florida Statutes ("FCRA").

### JURISDICTION AND VENUE

1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. Sections 451,

1331, 1337 and 1343. This action arises under 42 U.S.C. Sections 2000e *et seq.* and

This Court has supplemental jurisdiction over Plaintiff Dr Scott's state law

claims pursuant to 28 U.S.C. Section 1367.

2.      Dr. Scott has exhausted her administrative remedies.

Dr. Scott filed three charges of discrimination and retaliation . Thereafter, by letter dated

May 20, 2014 and June 3, 2014 the EEOC issued Dr. Scott a Notice of Right to Sue.

Dr. Scott initiated this action within ninety (90) days of receipt of the EEOC's Notice

of Right to Sue letters.  All conditions precedent to institution of this action by Plaintiff

has been fulfilled.

3.      Pursuant to 28 U.S.C. Section 1391, venue of this action is proper in the

Middle District of Florida because all of the alleged unlawful acts complained of herein

occurred in Sarasota County, Florida.

## PARTIES

4.      At all times material hereto, Defendant Hospital continuously has been doing business in the State of Florida and the City Sarasota, and continuously has had at least 15 employees.  At all times material hereto, Defendant Hospital continuously has been an employer engaged in an industry effecting commerce within the meaning of Title VII and the Florida Civil Rights Act. *See* 42 U.S.C. Section 2003 *et seq.*, and Section 760.02(7), Florida Statutes, and 29 U.S.C. Section 621-634.

5.      At all times material hereto, Defendant HCA continuously has been doing business in the State of Florida and the City Sarasota, and continuously has had at least 15 employees.  At all times material hereto, Defendant HCA continuously has been an employer engaged in an industry effecting commerce within the meaning of Title VII and the Florida Civil Rights Act. *See* 42 U.S.C. Section 2003 *et seq.*, and Section 760.02(7), Florida Statutes, and 29 U.S.C. Section 621-634.

6.      At all times material hereto, Defendant Emcare continuously has been doing business in the State of Florida and the City Sarasota, and continuously has had at least 15 employees.  At all times material hereto, Defendant Emcare continuously has been an employer engaged in an industry effecting commerce within the meaning of Title VII and the Florida Civil Rights Act. *See* 42 U.S.C. Section 2003 *et seq.*, and Section 760.02(7), Florida Statutes, and 29 U.S.C. Section 621-634.

7.     The Plaintiff Dr. Scott is a natural person who is a female.  At all times material hereto, Dr. Scott was employed by Defendant.

## FACTUAL ALLEGATIONS

8.    Employed full time as a Physician Hospitalist at Doctors Hospital of Sarasota under the contract of Inpatient Services of Florida also referred to as EmCare. Duties included managing patients admitted to hospitalist services and on call responsibilities. Have worked without a written complaint or lawsuit for over 20 years in the medical field.

February 2013 the Plaintiff was approached by her boss Dr. Michael Schandorf and told "Bob Meade (CEO of Doctors Hospital) wanted her gone."  The Plaintiff was told according to Bob Meade "She didn't fit the culture" Bob Meade told Dr. Schandorf he wouldn't reconsider his position as "they always revert to their original behavior"  Dr. Middledorf  had been offered anger management classes. Implying that males can benefit from anger management classes, but women are incapable of benefitting from retraining. Never given a written or verbal warning until this time.

9.      The plaintiff was told by Dr. Schandorf that according to Bob Meade two incidents had occurred one was a difference of opinion with an oncology consultant, Dr. Mamus. The other incident, the plaintiff, was never told details or given written notice. The plaintiff was informed that there was "awful behavior" witnessed by another doctor. Neither the plaintiff nor Dr. Schandrof was made aware of the details of the "awful behavior" or who the person was who witnessed this event.

The second incident involved a disagreement with an oncologist consultant. The plaintiff was a member of the Patient Care review committee: the ordinary procedure would have been for the consultant to write up the complaint and submit it for medical review. The plaintiff would have recused herself and allowed colleagues to review the disagreement. Then the plaintiff would have responded to the complaint. The complaint involved a patient with myelodysplastic syndrome with 30% leukemic transformation. Myelodysplastic syndrome is a nonfunctional bone marrow. The bone marrow produces red and white blood cells and platelets. The leukemic transformation was an abnormality of the white blood cells. The patient was given chemotherapy aimed to remove the dysfunctional white cells, but once removed she had a nonfunctional bone marrow. The patient was not aware of the myelodysplastic syndrome. After almost a month of chemotherapy, constant blood transfusions, patient had 15-% leukemic transformation and worsening myelodysplastic syndrome. At this point, the oncologist made the decision to double her chemotherapy to try to eradicate the leukemic cells. The patient was 83 years old, and the genetic analysis of her bone marrow and her age meant she would never be a candidate for a bone marrow transplant, the only cure for myelodysplastic syndrome.

10. It was at this point the plaintiff informed the patient of her myelodysplastic syndrome. When informed of her true prognosis, the patient became upset and complained to the oncologist who took her complaints to Bob Meade. Bob Meade immediately sided with the consultant without ever asking the plaintiff's opinion or submitting a complaint through proper channels. Bob Meade has established financial

commitments to the institution but no medical background and was in no position to pass

any judgement on this situation. The oncologist had the plaintiff removed from the case.

The patient went on to suffer the untoward effects of the increased chemotherapy and

died about ten days later.

11.      Over the next several months, Dr. Schandrof stated repeatedly to the plaintiff that

he supported her staying employed at Doctor's Hospital. Since the "alleged behavior,"

had not recurred he did not see a reason to fire her. Dr. Schandorf was medical director a

trained physician who was also the plaintiff's hospitalist partner. Bob Meade uniquely

chose to insert himself into the firing process of the plaintiff and  bypass normal

procedures allotted to male physicians.

A predecessor Dr. Steven Middledorf, was fired,  was given warnings and a chance to

attend  anger management class to correct his behavior. According to Dr. Schandorf, it

took Dr. Middledorf six months  to respond to the letter asking him to undergo anger

management sessions. He eventually attended the sessions. When his behavior persisted,

he was fired with a 3 month notification.

12.      August 1,2013 the plaintiff was sent a public memo informing her that she would

be replaced in her full time position by Dr. Unaeze. The plaintiff could remain in as

needed capacity. The plaintiff remained in her position after Dr. Unaeze reneged on his

contract.The plaintiff was at work when Dr. Schandorf introduced her to another male

candidate interviewing for her position.

13.      Dr. Tracy Vasille a female hospitalist a few years before I came was suddenly

fired  by Mr. Meade. She was often described  as a "gay female" and that she was "odd."

I was told in a conversation with Dr. Schandorf that she had not said "Hi" to Bob Meade

twice in the Doctors lounge implying that had something to do with her firing. She had

apologized to Bob Meade despite that she was fired. Never made aware of any specific

issues she had as a medical practitioner.

14.     The Plaintiff and Dr. Tracey Vasille had seen a different process of physician

review subject uniquely to Bob Meade's opinion. Male physicians behavior complaints

were turned over to the patient review committee. The Plaintiff was a member of the peer

review committee no male physicians were treated as she had been. Multiple complaints

on male physician employees were reviewed. All were given the opportunity to address

the issues, and none was fired. There had never been a complaint about the Plaintiff's

behavior made to the committee. Bob Meade being the CEO of the company and being a

controlling party of the financial relationship with Emcare the Plaintiff did not feel she

could safely make her concerns known. When the plaintiff had brought up the subject to

her boss Dr. Schandorf, he informed her Bob Meade could fire at will. The plaintiff filed

a complaint with the Eeoc on September 16, 2013 of gender discrimination against Bob

Meade and Healthcare America.

15.     On October 3, 2013 the Plaintiff was at work when Dr. Schandorff talked to her

about new job opportunities.  The Plaintiff had hoped that Doctor's hospital would

review her complaint. The Plaintiff told Dr. Schandorff that she had filed an EEOC

complaint about gender discrimination, he was not aware. The Plaintiff texted her lawyer

"again today Bob Meade hasn't changed his mind, find another job. This job is to

stressful to have this added she had been treated like a third-class citizen never proper

notification, no way to move on.." She was advised to go to Human resource department

with her complaints.

16.    The Plaintiff went to the Human recourse department to ask why they were not investigating her complaint against Bob Meade for gender discrimination. The HR personnel said she would refer the complaint to her boss. Two hours later the Plaintiff was escorted out of Doctors Hospital for "making a scene" in the HR department and the Plaintiff's badge removed,  she was instructed to leave. In reference to "the scene" the Plaintiff was talking behind closed doors, to the highest person available in Human Resources department there was  no shouting or use of profanity. Days before a male Gastroenterologists was in the Doctor's lounge laughing at the fact he had been publicly corrected by Bob Meade for behavior related to his charting.

He said he told Bob Meade to "hire him staff to do the charting and fuck Off," He said he received a letter from Bob Meade about his insubordination, and that should he repeat his conduct twice more he would loose his admitting privileges.

17.    The following morning the plaintiff was called by Mr. Tad Hallmasser from Emcare and in the three-minute conversation was fired. The Plaintiff had informed Mr. Hallmasser she had filed an Eeoc complaint against Bob Meade for gender discrimination. The Plaintiff asked if it was Emcare's determination that the case had no merit. Mr Hallmasser replied he didn't care he was firing the Plaintiff "the only company that could".

18.    The following Monday the Plaintiff received a letter from Susan Leonard CEO of the central division of EMcare that she was terminated on advice from Doctors Hospital for "ongoing behavioral concerns and contentious interactions with staff." .Emcare, a staffing organization, had fired the plaintiff without any consideration of  federally protected rights. The termination letter had been written October 3 on council of Bob

Meade after the human resource department had brought her complaints to him. The human resource department never made any attempt to investigate the allegations of gender discrimination. Bob Meade was the only person at Doctor's Hospital that had the power to order the plaintiff's immediate termination.

19.    At all times material hereto, Dr. Scott  was employed by Defendant Emcare, which Defendant Hospital has control of her employment as set forth in above reference paragraph  1-18.

20.    Dr. Scott began her employment with the Defendant as an November 2011.  Plaintiff was subjected to different terms and conditions of her employment than her male co-workers as stated above.

### COUNT I
### DEFENDANT HAS VIOLATED THE FLORIDA CIVIL RIGHTS ACT
### AGAINST DEFENDANT HOSPITAL (Disparate Treatment)
### Chapter 760 of Florida Statutes

21.    Plaintiff Dr. Scott adopts and realleges paragraphs 1-20  above as if incorporated herein.

22.    Plaintiff Dr. Scott is a member of a protected class.

23.    The Defendant Hospital  is an employer that employs over 100 people, and is subject to FCRA, Section 760.10, Florida Statutes,  Chapter 760 states:

**It is against the law to discriminate in employment on the basis of race, color, religion, sex, national origin, age, handicap or marital status.**

24.    The Defendant is an employer that employs over 100 people, and is

subject to Chapter 760 of the Florida Statutes. That Defendant violated the terms under the Chapter 760 of the Florida Statutes.

25.     That Dr. Scott due to her Gender, was treated with disparate treatment as alleged above in Paragraphs 1 and 18 above.

26.   The Plaintiff Dr. Scott was not provided the same terms, conditions and privileges as her comparators.

27.     The Defendant Hospital intentionally discriminated against Dr. Scott.

28.     The effect of the actions complained of as aforementioned has been to deprive the Plaintiff of equal employment opportunities, and otherwise to adversely affect her status as employee because of Gender.

29.   The unlawful employment practices complained of were intentional.

30.     The unlawful employment practices against the Plaintiff were done with malice or reckless indifference to the Plaintiff's State protected rights.

31.     As a direct and proximate result of Defendant's unlawful employment practices, the Plaintiff was emotionally harmed, suffered, and will continue to suffer, a loss of wages and other employment benefits, a loss of earning capacity, damages to her professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment, humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff requests this Court issue an order against Defendant awarding the Plaintiff compensatory damages, Punitive Damages, lost back pay, front pay, award employment retirement package, attorney's fees and costs, together with such other relief

as this Court deems just and proper.

## COUNT II
## DEFENDANT HAS VIOLATED THE FLORIDA
## CIVIL RIGHTS ACT
## AGAINST DEFENDANT HCA  (Disparate Treatment)
## Chapter 760 of Florida Statutes

32.     Plaintiff Dr. Scott adopts and realleges paragraphs 1-20 above as if incorporated herein.

33.     Plaintiff Dr. Scott is a member of a protected class.

34.     The Defendant HCA is an employer that employs over 100 people, and is subject to FCRA, Section 760.10, Florida Statutes,  Chapter 760 states:

**It is against the law to discriminate in employment on the basis of race, color, religion, sex, national origin, age, handicap or marital status.**

35.     The Defendant is an employer that employs over 100 people, and is subject to Chapter 760 of the Florida Statutes. That Defendant violated the terms under the Chapter 760 of the Florida Statutes.

36.     That Dr. Scott due to her Gender, was treated with disparate treatment as alleged above in Paragraphs _____ and _____ above.

37.   The Plaintiff Dr. Scott was not provided the same terms, conditions and privileges as her comparators.

38.     The Defendant HCA intentionally discriminated against Dr. Scott.

39.   The effect of the actions complained of as aforementioned has been to deprive the Plaintiff of equal employment opportunities, and otherwise to adversely affect her status as employee because of Gender.

40.   The unlawful employment practices complained of were intentional.

41.   The unlawful employment practices against the Plaintiff were done with malice or reckless indifference to the Plaintiff's State protected rights.

42.   As a direct and proximate result of Defendant's unlawful employment practices, the Plaintiff was emotionally harmed, suffered, and will continue to suffer, a loss of wages and other employment benefits, a loss of earning capacity, damages to her professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment, humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff requests this Court issue an order against Defendant awarding the Plaintiff compensatory damages, Punitive Damages, lost back pay, front pay, award employment retirement package, attorney's fees and costs, together with such other relief as this Court deems just and proper.

## COUNT III
### DEFENDANT HAS VIOLATED THE FLORIDA CIVIL RIGHTS ACT
### AGAINST DEFENDANT EMCARE (Disparate Treatment)
### Chapter 760 of Florida Statutes

43.   Plaintiff Dr. Scott adopts and realleges paragraphs 1-20 above as if incorporated herein.

44.   Plaintiff Dr. Scott is a member of a protected class.

45.     The Defendant Hospital is an employer that employs over 100 people, and is subject to FCRA, Section 760.10, Florida Statutes, Chapter 760 states:

**It is against the law to discriminate in employment on the basis of race, color, religion, sex, national origin, age, handicap or marital status.**

46.     The Defendant is an employer that employs over 100 people, and is subject to Chapter 760 of the Florida Statutes. That Defendant violated the terms under the Chapter 760 of the Florida Statutes.

47.     That Dr. Scott due to her Gender, was treated with disparate treatment as alleged above in Paragraphs above.

48.     The Plaintiff Dr. Scott was not provided the same terms, conditions and privileges as her comparators.

49.     The Defendant Emcare intentionally discriminated against Dr. Scott.

50.     The effect of the actions complained of as aforementioned has been to deprive the Plaintiff of equal employment opportunities, and otherwise to adversely affect her status as employee because of Gender.

51.     The unlawful employment practices complained of were intentional.

52.     The unlawful employment practices against the Plaintiff were done with malice or reckless indifference to the Plaintiff's State protected rights.

53.     As a direct and proximate result of Defendant's unlawful employment practices, the Plaintiff was emotionally harmed, suffered, and will continue to suffer, a

loss of wages and other employment benefits, a loss of earning capacity, damages to her

professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment,

humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff requests this Court issue an order against Defendant awarding the

Plaintiff compensatory damages, Punitive Damages, lost back pay, front pay, award

employment retirement package, attorney's fees and costs, together with such other relief

as this Court deems just and proper.

## COUNT IV
## DEFENDANT HOSPITAL AND DEFENDANT HCA HAS VIOLATED TITLE VII
## (Disparate Treatment)

54.     Plaintiff  Dr. Scott adopts and realleges paragraphs **1-20** above as if
incorporated herein.

55.     Plaintiff  Dr. Scott is a member of a protected class because of her

Gender.

56.     The Defendant is an employer that employs over 100 people, and is

subject to 42 U.S.C. Section 2000e et seq.

57.     That the Plaintiff throughout her tenure with Defendant suffered disparate

treatment in the terms and conditions of her employment as described in Paragraphs

above.

58.     The Plaintiff Dr. Scott was not provided the same terms, conditions and

privileges as her Male comparators.

59.     The Defendant has intentionally discriminated against Plaintiff because

of her Gender in violation of Title VII, 42 U.S.C. Section 2000e et seq. by disparate

treatment of Plaintiff based upon her Gender.

60.    The unlawful employment practices complained of were intentional.

61.    The unlawful employment practices against the Plaintiff were done with

malice or reckless indifference to the Plaintiff's federally protected rights.

62.    As a direct and proximate result of Defendant's unlawful employment

practices, the Plaintiff, Dr. Scott was emotionally harmed, suffered, and will continue to

suffer, a loss of wages and other employment benefits, a loss of earning capacity,

damages to her professional reputation, a loss of dignity, a loss of the enjoyment of life,

embarrassment, humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff requests this Court issue an order against Defendant

awarding the Plaintiff compensatory damages, Punitive Damages, lost back pay, front

pay, award  employment retirement package, attorney's fees and costs, together with such

other relief as this Court deems just and proper.

## COUNT IV

## PLAINTIFF'S CLAIM OF RETALIATION IN VIOLATION OF TITLE VII BY DEFENDANT HOSPITAL, HCA AND EMCARE

63.    Plaintiff adopts and realleges paragraphs 1-20  above as if incorporated

herein.

64.    That the Defendant retaliated against the Plaintiff as described in paragraph

ABOVE.

65.   Defendant took adverse employment action against Plaintiff as described above Paragraphs because of her complaints of discrimination and exercising her civil rights.

66.   Defendant's adverse action against Plaintiff was in violation of Title VII provisions.

67.   Defendant's adverse employment action was intentional, and with malice or reckless indifference to the federally protected rights of Plaintiff.

68.   As a direct and proximate result of Defendant's unlawful employment practices and violation, Plaintiff was emotionally harmed, suffered, and will continue to suffer, a loss of wages and other employment benefits, a loss of earning capacity, damages to their professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment, humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff requests this Court issue an order against Defendant awarding the Plaintiff compensatory damages, Punitive Damages, lost back pay, front pay, award  employment retirement package, attorney's fees and costs, together with such other relief as this Court deems just and proper.

Dated July 16, 2014

## **VERIFICATION OF DOCUMENT**

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE
FOREGOING VERIFIED COMPLAINT TO THE
AND THAT THE FACTS STATED ARE TRUE AND CORRECT.

/s/DR. MICHELLE SCOTT

**FILED**

_____

Plaintiff, DR. MICHELLE SCOTT

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), and FCRA, the Plaintiff hereby demands

a trial by jury on all issues triable of rights by a jury.

Respectfully submitted,

ROMANO LAW CENTER, P.A.
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
(561) 271-1769 tel.
(561) 299-3892 fax.

By:   /s/ Jay F. Romano
       Jay F. Romano
       Trial Attorney
       Florida Bar No.: 0934097

/s/DR. MICHELLE SCOTT

Plaintiff, DR. MICHELLE SCOTT

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), and FCRA, the Plaintiff hereby demands

a trial by jury on all issues triable of rights by a jury.

Respectfully submitted,

ROMANO LAW CENTER, P.A.
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
(561) 271-1769 tel.
(561) 299-3892 fax.

By:   /s/ Jay F. Romano
      Jay F. Romano
      Trial Attorney
      Florida Bar No.: 0934097

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DR. MICHELLE G. SCOTT,**

     **Plaintiff,**

**v.**                                   **Case No.  8:14-CV-01762-JSM-TBM**

**SARASOTA DOCTORS HOSPITAL, INC,
WEST FLORIDA PHYSICIAN NETWORK, LLC,
and
EMCARE, INC.,**

     **Defendants.**

_____/

**ANSWER**

     Now comes the Defendant, EmCare, Inc., by and through undersigned counsel, to provide the following responses and affirmative defenses to the factual allegations contained in Plaintiff's Verified Complaint and Demand for Trial by Jury ("Complaint").  Plaintiff's initial paragraph is merely a recitation of the fact that she is suing the various defendants and citing the statutes under which she brings suit.  EmCare admits that it is a corporation foreign to the state of Florida.  EmCare denies that it violated any of the statutes listed or that it violated any legal obligation that it owed to Plaintiff.  EmCare further denies that it has damaged Plaintiff in any manner.

     1.     Paragraph One is a legal summary of Plaintiff's claim of federal question jurisdiction and supplemental jurisdiction for this action to which no response is required.

1

To the extent that a response is required, at this time Defendant avers that it is unaware of any basis to challenge Plaintiff's claim to such jurisdiction.

2.      EmCare admits that Plaintiff filed charges alleging discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph Two.

3.      EmCare denies that it engaged in any unlawful acts.  The remainder of Paragraph Three appears to be a legal summary of the Plaintiff's claim that venue is proper in this Court.  EmCare avers that at this time it is unaware of any basis to challenge Plaintiff's claim to such venue.

4.      EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Four of the Complaint.

5.      EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Five of the Complaint.

6.      EmCare admits that it does business in the State of Florida and further admits that it does business in the City of Sarasota.  EmCare admits that it has 15 or more employees.  The remaining allegations in Paragraph Six are vague legal conclusions that do not require an answer.

7.      EmCare admits that the Plaintiff is a human being and that she appears to be female.  EmCare denies that it employed Plaintiff.  EmCare is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph Seven of the Complaint.

8.      EmCare is without knowledge or information to either affirm or deny the following statements contained in Paragraph Eight of the Complaint because Plaintiff does not specify to whom the statements refer:

> Employed full time as a Physician Hospitalist at Doctors Hospital of Sarasota under the contract of Inpatient Services of Florida also referred to as EmCare.  Duties included managing patients admitted to hospitalist services and on call responsibilities.  Have worked without a written complaint or lawsuit for over 20 years in the medical field.
>
> * * * *
>
> Implying that males can benefit from anger management classes, but women are incapable of benefiting from retraining.  Never given a written or verbal warning until this time.

EmCare admits that Dr. Michael Schandorf was Plaintiff's supervisor.  EmCare admits that Dr. Middledorf, whose situation was completely different that Plaintiff's, was offered anger management classes.  Defendants deny the remaining allegations contained in Paragraph Eight.

9.      EmCare denies that Plaintiff was never informed of the details regarding the numerous complaints of her inappropriate behavior in the workplace throughout the time she worked at the Hospital.  EmCare admits that Plaintiff was on the Patient Care review committee at Defendant Sarasota Doctor's Hospital, Inc. ("Hospital").  EmCare further admits that one of the many complaints against Plaintiff was her inappropriate handling of a patient in the care of an oncologist.  EmCare denies that the only option for the oncologist to complain about Plaintiff's inappropriate conduct was to go to the Patient Care review committee.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph Nine.

10.     EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10.

11.     EmCare admits that Dr. Schandorf was the medical director at the Hospital, a trained physician, and a partner of the Plaintiff.  EmCare further admits that Dr. Schandorf attempted to work with Plaintiff to correct her problems but that he did not see a reason to end her assignment at the Hospital prior to her inappropriate behavior in October 2013. EmCare further admits that Dr. Middledorf, whose situation was not similar to the Plaintiff's, was given warnings about his behavior in the workplace and that Dr. Middledorf was required to attend anger management classes.  EmCare further admits that Dr. Middledorf, was terminated when his inappropriate behavior persisted after he attended the anger management classes.  EmCare denies the remaining allegations contained in Paragraph 11.

12.     EmCare admits that Plaintiff stayed in a full time position in 2013 after Dr. Unaeze opted to not accept a full time position at the Hospital.  EmCare avers that Plaintiff was aware, and had agreed to, the plan for her to commence working part-time at the Hospital.  EmCare is without information or knowledge sufficient to confirm the truth as to the allegations contained in Paragraph 12.

13.     EmCare admits that Dr. Schandorf explained to Plaintiff that Dr. Tracy Vasil had been rude to Mr. Meade and that he had recommended to her to apologize to him for her conduct.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14.     EmCare admits that at some point Dr. Schandorf had a conversation with the Plaintiff in which they discussed the fact that the Hospital was entitled to request that a

doctor be removed from the Hospital without having to give a reason for the request. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14.

15.    EmCare admits that in October 2013 immediately after the Hospital had requested that Plaintiff be removed from the premises, Plaintiff told Dr. Schandorf in a loud and angry voice that she was "furious" with the Hospital and that she had confronted the Hospital HR department that day about her EEOC complaint.  EmCare further admits that until that conversation it was unaware that Plaintiff had filed a complaint with the EEOC. EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.    EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.

17.    EmCare admits that on or about October 4, 2014, Mr. Tad Haumesser telephoned the Plaintiff and informed her that she was being removed from her position at the Hospital at the Hospital's request.  EmCare denies the remaining allegations in Paragraph 17.

18.    EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegation regarding when Plaintiff received the letter notifying her of her termination.  EmCare is further without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Hospital's investigation into Plaintiff's claims of gender discrimination.  EmCare admits that Susan Leonard sent Plaintiff a letter dated October 3, 2014 that said, in part, that Plaintiff was being removed from her position at the

Hospital at the Hospital's request due to "ongoing behavioral concerns and contentious interactions with staff and patients. . ."  EmCare denies the remaining allegations contained in Paragraph 18.

19.     EmCare denies that it employed Plaintiff.  EmCare is unable to respond to the remaining vague allegations that the "Hospital has control of her employment…."

20.     EmCare denies the allegations contained in Paragraph 20 as EmCare did not employ Plaintiff and Plaintiff was not subjected to different terms and conditions of her employment than her male co-workers.

21.     EmCare incorporates its answers to Paragraphs 1-20 as if restated in full herein.

22.     EmCare admits that Plaintiff, as is every other adult in the United States, is a member of a protected class.

23.     EmCare admits that Plaintiff partially quotes the FCRA, Section 760.10, Florida Statues, Chapter 760.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23.

24.     EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24.

25.     EmCare denies that it treated Plaintiff differently because of her gender. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25.

26.     EmCare denies the allegations contained in Paragraph 26 to the extent that these apply to it.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26.

27.     EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27.

28.     EmCare denies the allegations contained in Paragraph 28 as these apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28.

29.     EmCare denies the allegations contained in Paragraph 29 as these apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 29.

30.     EmCare denies the allegations contained in Paragraph 30 as these apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 30.

31.     EmCare denies the allegations contained in Paragraph 31 as these apply to it and deny that it has damaged Plaintiff in any way.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31.

32.     EmCare incorporates its answers to Paragraphs 1-20 of the Complaint as if restated in full herein.

33.     EmCare admits that Plaintiff, along with every other adult in the United States, is a member of a protected class.

34.     EmCare admits that Plaintiff partially quotes the FCRA, Section 760.10, Florida Statues, Chapter 760.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34.

35.     EmCare denies that it violated any legal duty it owed to the Plaintiff.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 35.

36.     EmCare denies that it subjected Plaintiff to disparate treatment.  EmCare is unable to either affirm or deny the remaining allegations contained in Paragraph 36 as Plaintiff left that Paragraph incomplete.

37.     EmCare denies the allegations contained in Paragraph 37 that apply to it.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 37.

38.     EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 38.

39.     EmCare denies the allegations contained in Paragraph 39 that apply to it.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39.

40.     EmCare denies the allegations contained in Paragraph 40 that apply to it.  EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 40.

41.     EmCare denies the allegations contained in Paragraph 41 that apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41.

42.     EmCare denies that it violated any legal duty that it owed to Plaintiff and it denies that it harmed Plaintiff in any way.  EmCare is without knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 42.

43.     EmCare incorporates its answers to Paragraphs 1-20 of the Complaint as if restated in full herein.

44.     EmCare admits that Plaintiff, along with every other adult in the United States, is a member of a protected class.

45.     EmCare is without knowledge or information sufficient to form a belief as to the truth of the allegation that the Defendant hospital employees 100 or more people. EmCare admits that Plaintiff partially quotes the FCRA, Section 760.10, Florida Statues, Chapter 760.

46.     The allegation that EmCare is subject to Chapter 760 of the Florida Statutes is a legal conclusion to which no response is required.  To the extent that a response is required, EmCare denies that Plaintiff has alleged sufficient facts in Paragraph 46 to demonstrate that it is subject to Chapter 760 of the Florida Statutes.  EmCare denies the remaining allegations contained in Paragraph 46.

47.     EmCare denies the allegations contained in Paragraph 47.

48.     EmCare denies the allegations contained in Paragraph 48.

49.     EmCare denies the allegations contained in Paragraph 49.

50.     EmCare denies the allegations contained in Paragraph 50.

51.     EmCare denies the allegations contained in Paragraph 51.

52.     EmCare denies the allegations contained in Paragraph 52.

53.     EmCare denies the allegations contained in Paragraph 53 and specifically denies that it caused any harm to the Plaintiff whatsoever.

54.     EmCare incorporates its answers to Paragraphs 1-20 of the Complaint as if restated in full herein.

55.     EmCare admits that the Plaintiff, along with every other adult in the United States, belongs to a protected class.

56.     EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 56.

57.     EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 57.

58.     EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is

without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 58.

59. EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 59.

60. EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 60.

61. EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 61.

62. EmCare notes that Plaintiff has not made a claim against it for disparate treatment in violation of Title VII and that therefore no answer is required to this Paragraph. To the extent that an answer is required, EmCare denies the allegations that apply to it and is without information and knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 62.

63.     EmCare incorporates its answers to Paragraphs 1-20 of the Complaint as if restated in full herein.

64.     EmCare denies that it retaliated against Plaintiff.  EmCare is unable to either affirm or deny the statement "as described in the paragraph ABOVE (sic)" because Plaintiff does not specify to paragraph to which she is referring.  EmCare is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 64.

65.     EmCare denies the allegations contained in Paragraph 65 that apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 65.

66.     EmCare denies the allegations contained in Paragraph 66 that apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 66.

67.     EmCare denies the allegations contained in Paragraph 67 that apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 67.

68.     EmCare denies the allegations contained in Paragraph 68 that apply to it. EmCare is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 68.

**WHEREFORE,** EmCare denies all allegations contained in the Complaint that it has not specifically admitted.  Defendant respectfully requests that each of Plaintiff's claims be

dismissed, that judgment be entered in its favor and that it be awarded such relief, including but not limited to its attorneys' fees and costs, that this Court deems reasonable and proper.

## AFFIRMATIVE DEFENSES

Defendant makes the following affirmative defenses without assuming the burden of proof unless legally required to do so. Defendant also reserves the right to add additional affirmative defenses should additional evidence be developed throughout the course of this litigation.

### First Affirmative Defense

Plaintiff was not an employee or applicant of EmCare.

### Second Affirmative Defense

Plaintiff was terminated for a legitimate, non-discriminatory, reason.

### Third Affirmative Defense

EmCare at all times acted in good faith towards Plaintiff.

### Fourth Affirmative Defense

Plaintiff failed to mitigate her damages.

### Fifth Affirmative Defense

Plaintiff unreasonably failed to take advantage of EmCare's complaint process to attempt to seek redress for her complaints of alleged discrimination and/or retaliation.

Dated this 29th day of August, 2014.

Respectfully submitted,

*/s/ Jay P. Lechner*
Jay P. Lechner, Esq.
Florida Bar No.: 0504351

jay.lechner@jacksonlewis.com
JACKSON LEWIS P.C.
100 South Ashley Drive, Suite 2200
Tampa, Florida  33602
Telephone:      (813) 512-3210
Facsimile:      (813) 512-3211

and

John M. Barr, Esq.
LAW OFFICE OF JOHN M. BARR,
 P.C.
4105 Stuart Avenue
Richmond, Virginia 23221
Telephone:      (804) 269-5078
Facsimile:      (571) 499-3796
John.Barr@jmblawoffice.com

*Pro Hac Vice Pending*

*Counsel for Defendant EmCare, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 29th day of August, 2014, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, and which will send an electronic notice of filing to Plaintiff's counsel: Jay F. Romano c/o Romano Law Center, P.A.  A copy of this Answer was also served via U. S. Regular Mail, first class, postage prepaid, upon the following:

Jay F. Romano, Esq.
Romano Law Center, P.A.
2255 Glades Road, Suite 324A
Boca Raton, FL  33431
Telephone: (561) 271-1769
Facsimile: (561) 299-3892
*Attorney for Plaintiff*

**I FURTHER CERTIFY** that to the best of my knowledge there are not any non-CM/ECF participants that require notification of this filing via U.S. Mail.

*/s/ Jay P. Lechner*
Jay P. Lechner

14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 8:14-CV-01762-JSM-TBM

DR. MICHELLE G. SCOTT,

      Plaintiff,

v.

SARASOTA DOCTORS HOSPITAL, INC.,
A FLORIDA CORPORATION D/B/A
DOCTORS HOSPITAL OF SARASOTA; AND
WEST FLORIDA PHYSICIAN NETWORK, LLC,
A FLORIDA LLC D/B/A HEALTHCARE AMERICA,
AND EMCARE, INC., A FOREIGN PROFIT
CORPORATION DOING BUSINESS IN THE STATE
OF FLORIDA; AND JOHN DOES 1-10,

      Defendants.

_____/

## DEFENDANT, SARASOTA DOCTORS HOSPITAL, INC.'S, ANSWER AND AFFIRMATIVE DEFENSES

      Defendant Sarasota Doctors Hospital, Inc. d/b/a Doctors Hospital of Sarasota ("the "Hospital") responds to Plaintiff's Complaint and states:

Jurisdiction and Venue

      1.     In response to paragraph 1, the Hospital admits that Scott purports to state a claim against the Hospital pursuant to 42 U.S.C. § 2000e, *et seq.*, and the Hospital admits that jurisdiction is vested in this Court; however, Hospital denies that Scott can state a claim against it under 42 U.S.C. § 2000e, *et seq.* because Scott was not an employee of the Hospital, and denies that Scott is entitled to any relief.

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

2.      In response to paragraph 2, the Hospital denies that Scott has exhausted all conditions precedent to the institution of this action, denies that Scott was an employee of Hospital as required by the applicable statutes in order for Scott to state a claim against Hospital and for the EEOC or FCHR to assert jurisdiction over the Hospital. The Hospital is without knowledge of, and therefore denies, the remaining allegations set forth in paragraph 2.

3.      In response to paragraph 3, the Hospital admits that venue is proper in the Middle District of Florida if Scott could state a claim against Hospital, which the Hospital denies. Hospital denies any remaining allegations set forth in paragraph 3.

Parties

4.      In response to paragraph 4, the Hospital admits that it does business in the state of Florida and the city of Sarasota and that it is engaged in an industry effecting commerce but denies that the Hospital is or was Scott's employer, and therefore, the Hospital is not an "employer" for purposes of this case despite having, in general, over 15 employees. The Hospital further states that the statutes cited in paragraph 4 speak for themselves and are the best evidence of their terms and denies any remaining allegations set forth in paragraph 4.

5.      In response to paragraph 5, the Hospital admits, on information and belief, that West Florida Physician Network, LLC ("WFPN") does business in the state of Florida, but is without knowledge as to whether WFPN employs at any given time 15 or more employees, or as to whether WFPN is engaged in an industry affecting interstate commerce and denies that Scott was employed by WFPN or the Hospital. The Hospital states that the

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

statutes cited in paragraph 5 speak for themselves and are the best evidence of their terms and denies any remaining allegations set forth in paragraph 5.

6.      In response to paragraph 6, the Hospital admits, on information and belief, that EmCare, Inc, ("EmCare") does business in the State of Florida and the city of Sarasota. The Hospital is without knowledge sufficient to admit or deny the remaining allegations. The Hospital states that the statutes cited in paragraph 6 speak for themselves and are the best evidence of their terms and denies any remaining allegations set forth in paragraph 6.

7.      In response to paragraph 7, the Hospital admits that Scott is a natural person who is female.  The Hospital denies that it ever employed Scott.

<u>Factual Allegations</u>

8.      In response to paragraph 8, the Hospital admits that Scott held privileges to provide medical treatment to patients while in the Hospital and on the Hospital premises. The Hospital denies that Scott was ever an employee.  To the best of the Hospital's information and belief, Scott was an employee or independent contractor of EmCare Inc. which is not owned or affilliated with the hospital.  EmCare supplies hospitalists and other physicians to a variety of hospitals, including the Hospital, pursuant to contracts EmCare has with those hospitals.  The Hospital admits that Scott was assigned by EmCare, pursuant to a professional services agreement, to provide hospitalist services at the Hospital beginning on January 25, 2012.  The Hospital admits that Dr. Middledorf held privileges at the Hospital pursuant to the Hospital's professional services agreement with EmCare, and that, like Scott, Dr. Mittendorf was the subject of different kinds of complaints than those directed towards Scott but which were, likewise, reported to EmCare by the Hospital, resulting in Dr.

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

Middledorf's removal from providing services for EmCare at the Hospital.  The Hospital admits that it requested that EmCare address and correct Scott's failure to conduct herself in a professional manner and, ultimately requested that EmCare remove Scott from providing services to the Hospital's patients pursuant to the Hospital's contract with EmCare.  The Hospital denies that Scott never received written or verbal warnings by EmCare and denies the statements attributed to Bob Meade.  The Hospital is without knowledge of, and therefore denies, all remaining allegations set forth in paragraph 8.

9.      In response to paragraph 9, the Hospital admits that it received numerous complaints from co-workers and patients about Scott's unprofessional behavior, including receiving a complaint from an oncology patient that resulted in the Hospital requesting that another EmCare hospitalist be assigned to the patient as an attending physician.  The attending physician who took over the patient's care was a female EmCare physician.  The Hospital denies that it controls or dictates medical treatment by its physician specialists and, instead, the Hospital admits only that it responded to the complaint of its patients and its own employees with regard to Scott's ongoing unprofessional behavior toward patients and Hospital staff.  The Hospital admits that, for a time, Scott was a member of the Patient Review Committee but denies that the Hospital failed to follow its own policies with regard to its patients or EmCare's physicians, including Scott.  The Hospital denies all of the remaining allegations set forth in paragraph 9.

10.      In response to paragraph 10, the Hospital admits that an oncology patient, and other patients, complained to the Hospital about Scott.  The Hospital admits that Scott was

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

removed from the patient's care at the patient's request. The Hospital denies the remaining allegations set forth in paragraph 10.

11.     In response to paragraph 11, the Hospital denies that the Hospital bypassed "normal" procedures in any way in connection with Scott and/or EmCare and denies that the Hospital treats its contractual relationship with EmCare as it relates to EmCare's male physicians differently than it does with regard to EmCare's female physicians. The Hospital is without knowledge of the specifics related to Dr. Mittendorf's relationship with Emcare but admits that, like Scott, Dr. Mittendorf had different intermittent but ongoing behavioral and professionalism complaints, which Bob Meade addressed with Dr. Shandorf, EmCare's Medical Director. The Hospital denies all remaining allegations set forth in paragraph 11.

12.     Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 12.

13.     In response to paragraph 13, the Hospital admits that Dr. Tracy Vasille had provided services at the Hospital from time to time as a physician for EmCare and currently has privileges to treat patients at the Hospital. The Hospital cannot understand what is being asserted in the first person, stream-of-consciousness allegations that remain and is, therefore, without knowledge of, and therefore denies, all remaining allegations set forth in paragraph 13.

14.     In response to paragraph 14, the Hospital denies that Scott filed a complaint with the EEOC on September 16, 2013, and denies that Bob Meade was a named respondent in any charge of discrimination. The Hospital denies that it had a different process of physician review for male and female physicians and denies that the process for physician

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

review was "subject uniquely to Bob Meade's opinion."  The Hospital is without knowledge of, and therefore denies, the remaining allegations set forth in paragraph 14.

15.     The Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 15.

16.     In response to paragraph 16, the Hospital admits that Scott acted in a rude and unprofessional manner towards staff in the Human Resources department in October, 2013, and admits that it requested that EmCare replace Scott as among the physicians through whom Emcare provided services to Hospital patients.  The Hospital denies that any physician ever told the Hospital's CEO Bob Meade to "f*** off," and is without knowledge of, and therefore denies, the remaining allegations set forth in paragraph 16.

17.     In response to paragraph 17, the Hospital states that it did not employ Scott and did not "fire" Scott.  The Hospital is without knowledge of, and therefore denies, the remaining allegations set forth in paragraph 17.

18.     In response to paragraph 18, the Hospital admits that Scott had sent a letter addressed to "HCA, Nashville, Tennessee," regarding an EEOC charge purportedly filed by Scott on or about September 23, 2013.  The Hospital denies that the purported EEOC charge was sent directly to it by Scott.  The Hospital denies that any termination letter received by Scott was written on "council [sic] of Bob Meade after the Human Resource department had brought her complaints to him."  The Hospital denies that Bob Meade or the Hospital had the authority to terminate Scott from employment anywhere because the Hospital did not employ Scott but instead the Hospital had the contractual right to request that EmCare remove Scott

6

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

from its assignments to the Hospital.  The Hospital is without knowledge of, and therefore

denies, all remaining allegations set forth in paragraph 18.

19.     In response to paragraph 19, the Hospital denies that it controlled Scott's

employment and denies that it ever employed Scott and realleges as though fully re-written

herein its responses to paragraphs 1-18.

20.     In response to paragraph 20, the Hospital denies that it employed Scott at any

time.  The Hospital denies all remaining allegations set forth in paragraph 20.

COUNT I
[SIC] Defendant Has Violated the Civil Rights Act
Against Defendant Hospital (Disparate Treatment)
Chapter 760 of the Florida Statutes

21.     The Hospital incorporates by reference its responses to paragraphs 1-20, as if

fully set forth herein.

22.     The Hospital admits that Scott is female.

23.     In response to paragraph 23, the Hospital denies that it ever employed Scott

and therefore denies that it is an "employer" under the FCRA in this case.  The Hospital

states that the FCRA speaks for itself and is the best evidence of its terms.  The Hospital

denies any remaining allegations set forth in paragraph 23.

24.     In response to paragraph 24, the Hospital denies that it ever employed Scott,

denies that it is an "employer" under the FCRA in this case and denies that it violated

Chapter 760 of the Florida Statutes with regard to Scott.  The Hospital states that Chapter

760 of the Florida Statutes speaks for itself and is the best evidence of its terms.

25.     In response to paragraph 25, the Hospital denies that it ever employed Scott,

denies that it is an "employer" under the FCRA in this case and denies that it violated

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

Chapter 760 of the Florida Statutes with regard to Scott and realleges as though fully re-written herein its responses to paragraphs 1-18 and denies any remaining allegations set forth in paragraph 25.

26.     In response to paragraph 26, the Hospital denies that it ever employed Scott, denies that it is an "employer" under the FCRA in this case and denies that it violated Chapter 760 of the Florida Statutes with regard to Scott and denies any remaining allegations set forth in paragraph 26.

27.     The Hospital denies the allegations set forth in paragraph 27.

28.     In response to paragraph 28, the Hospital denies that Scott "had the status of employee" of the Hospital during the time that she provided services at the Hospital and denies each remaining allegation set forth in paragraph 29.

29.     The Hospital denies the allegations set forth in paragraph 29.

30.     The Hospital denies Scott was an employee and denies the allegations set forth in paragraph 30.

31.     The Hospital denies that Scott was an employee and denies the allegations set forth in paragraph 31.

COUNT II
[SIC] Defendant Has Violated the Florida Civil Rights Act
Against Defendant HCA (Disparate Treatment)
Chapter 760 of the Florida Statutes

32.     The Hospital incorporates by reference its responses to paragraphs 1-20 as if fully set forth herein.

33.     The Hospital admits Scott is female.

8

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

34.     The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the subsequent paragraphs through 42 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."

35.     The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the subsequent paragraphs through 42 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."

36.     The Hospital denies the allegations set forth in paragraph 36 as those allegations may relate to it.  The Hospital is without knowledge of, and therefore denies, the allegations as they pertain to Defendant HCA.

37.     The Hospital denies the allegations set forth in paragraph 37 as those allegations may relate to it.  The Hospital is without knowledge of, and therefore denies, the allegations as they pertain to Defendant HCA.

38.     The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the subsequent paragraphs through 42 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."

39.     The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the subsequent paragraphs through 42 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

40.    The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the subsequent paragraphs through 42 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."

41.    The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the subsequent paragraphs through 42 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."

42.    The Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If it is not a typographical error than, in any event, no response is due from the Hospital against this "defendant."

<u>COUNT III</u>
<u>[SIC] Defendant Has Violated the Florida Civil Rights Act</u>
<u>Against Defendant EmCare (Disparate Treatment)</u>
<u>Chapter 760 of the Florida Statutes</u>

43.    The Hospital incorporates by reference its responses to paragraphs 1-20 as if fully set forth herein.

44.    No response is due from the Hospital to these allegations.

45.    No response is due from the Hospital to these allegations.

46.    No response is due from the Hospital to these allegations.

47.    No response is due from the Hospital to these allegations.

48.    No response is due from the Hospital to these allegations.

49.    No response is due from the Hospital to these allegations.

50.    No response is due from the Hospital to these allegations.

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

51.     No response is due from the Hospital to these allegations.

52.     No response is due from the Hospital to these allegations.

53.     No response is due from the Hospital to these allegations.

<u>COUNT IV</u>
<u>Defendant Hospital and Defendant HCA Has **[SIC]** Violated Title VII</u>
<u>(Disparate Treatment)</u>

54.     The Hospital incorporates by reference its responses to paragraphs 1-20 as if fully set forth herein.

55.     The Hospital admits Scott is female.

56.     In response to paragraph 56, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs 54 through 62 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 56.

57.     In response to paragraph 57, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs 54 through 62 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 57.

11

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

58.    In response to paragraph 58, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs 54 through 62 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 58.

59.    In response to paragraph 59, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs 54 through 62 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 59.

60.    In response to paragraph 60, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs 54 through 62 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 60.

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

61.    In response to paragraph 61, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs 54 through 62 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 61.

62.    In response to paragraph 62, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this paragraph is not a typographical error than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant HCA, Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 62.

<u>COUNT IV (sic)</u>
<u>Plaintiff's Claim of Retaliation in Violation of Title VII</u>
<u>By Defendant Hospital, HCA and EmCare</u>

63.    Hospital incorporates its responses to paragraphs 1-20 as if fully set forth herein.

64.    In response to paragraph 64, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this and the paragraphs through 68 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital

13

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

denies that it employed Scott and denies all remaining allegations set forth therein. As to Defendant Emcare, the Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 64.

65.    In response to paragraph 64, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error. If this and the paragraphs through 68 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant." However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein. As to Defendant Emcare, the Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 64.

66.    In response to paragraph 66, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error. If this and the paragraphs through 68 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant." However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein. As to Defendant Emcare, the Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 66.

67.    In response to paragraph 67, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error. If this and the paragraphs through 68 are not typographical errors than, in any event, no response is due from the Hospital against this "defendant." However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein. As to

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

Defendant Emcare, the Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 67.

68.    In response to paragraph 64, the Hospital denies "HCA" is a named defendant and requests that this paragraph be stricken as an apparent typographical error.  If this paragraph is not a typographical error than, in any event, no response is due from the Hospital against this "defendant."  However, as relates to the Hospital, the Hospital denies that it employed Scott and denies all remaining allegations set forth therein.  As to Defendant EmCare, the Hospital is without knowledge of, and therefore denies, the allegations set forth in paragraph 68.

## AFFIRMATIVE DEFENSES

69.    First Affirmative Defense.  The Hospital, through its agent, West Florida Division, Inc., contracted with EmCare for Emcare to provide hospitalist treatment to Hospital patients.  The Hospital did not employ Scott and she was not an employee of the Hospital as that term is defined by either Title VII or the Florida Civil Rights Act. Accordingly, Scott fails to state a claim against the Hospital upon which relief can be granted and her Complaint should be dismissed.

70.    Second Affirmative Defense.  Scott has waived any claims which she has or may have against the Hospital by contract.

71.    Third Affirmative Defense.  The Hospital has an absolute and/or qualified privileged by statute and contract to act with regard to Scott's Hospital privileges.

15

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

72.    Fourth Affirmative Defense.  Scott's damages, if any, are barred to the extent that Scott has failed to comply with her legal duty to mitigate her injuries and damages, if any.

73.    Fifth Affirmative Defense.  Scott's Complaint fails to allege acts or omissions by the Hospital that could in any meaningful sense be considered evidence of willful, wanton, or malicious conduct towards Scott that are sufficient to permit an award of punitive or exemplary damages.

74.    Sixth Affirmative Defense.  The Hospital is entitled to a set-off or credit with respect to any amount that might be awarded to Scott in the amount of Scott's actual interim earnings, benefits or other compensation or in an amount Scott could have earned with reasonable effort.

75.    Seventh Affirmative Defense.  Any action taken by Hospital concerning Scott would have been the same regardless of her gender or alleged protected activity.

76.    Eighth Affirmative Defense.  Scott's claims are barred to the extent that they were not alleged or encompassed within the administrative charge filed by Scott, or the administrative investigation thereof.

77.    Ninth Affirmative Defense.  Scott unreasonably failed to take advantage of preventive and corrective opportunities provided by Hospital.

78.    The Hospital reserves the right to assert additional defenses and affirmative defenses as they become known to it during the course of this action, including but not limited to the after acquired evidence defense.

*Scott v. Sarasota Doctors Hospital, et al*
Case No. 0:14-cv-01762-JSM-TBM
Defendant, Sarasota Doctors Hospital, Inc.'s, Answer and Affirmative Defenses

Respectfully submitted,

/s/ Tracey K. Jaensch
FORDHARRISON LLP

Tracey K. Jaensch, Esq.
Florida Bar No. 907057
FORDHARRISON LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida 3360
Telephone (813) 261-7800
Facsimile  (813) 261-7899

*Attorneys for Defendants Sarasota*
*Doctors Hospital and West Florida*
*Physician Network, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Jay F. Romano, Esq., jromanopa@yahoo.com, Jay P. Lechner, Esq., jay.lechner@jacksonlewis.com and John M. Barr, Esq., John.Barr@jmblawoffice.com.  A copy of this Answer was also served via U.S. Regular Mail, first class, postage prepaid, upon the following:

Jay F. Romano, Esquire
Romano Law Center, P.A.
2255 Glades Road, Suite 324A
Boca Raton, FL  33431

Jay P. Lechner, Esquire
JACKSON LEWIS P.C.
100 South Ashley Drive, Suite 2200
Tampa, FL 33602

John M. Barr, Esquire
LAW OFFICE OF JOHN M. BARR, P.C.
4105 Stuart Avenue
Richmond, Virginia  23221

/s/ Tracey K. Jaensch
Tracey K. Jaensch, Esq.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DR. MICHELLE G. SCOTT,**

> **Plaintiff,**

v.                                          **Case No.  8:14-cv-1762-T-30TBM**

**SARASOTA DOCTORS HOSPITAL, INC.,**
**WEST FLORIDA PHYSICIAN NETWORK,**
**LLC, and EMCARE, INC.,**

> **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Sarasota Doctors Hospital, Inc.'s Motion for Summary Judgment (Dkt. 64), EmCare, Inc.'s Motion for Summary Judgment (Dkt. 66), and Plaintiff's Responses in Opposition thereto (Dkts. 78, 79).  The Court, having reviewed the motions, responses, record evidence, and being otherwise advised in the premises, concludes that the Hospital's motion should be denied and Emcare's motion should be granted.

## SUMMARY

Plaintiff Dr. Michelle G. Scott alleges gender discrimination and retaliation under Title VII and the Florida Civil Rights Act ("FCRA") against Defendants Sarasota Doctors Hospital, Inc. and Emcare, Inc. related to the Hospital's request to have Scott removed from

working at the Hospital and Emcare's subsequent termination of its contract with Scott.  Both

Defendants move for summary judgment.[1]

The Court concludes that there is an issue of fact on the gender and retaliation claims

against the Hospital because Scott has pointed to sufficient evidence to make the issue of

discriminatory intent one for the jury—Scott has shown that the Hospital treated a similarly-

situated male doctor more favorably.  The Court also concludes that, although the Hospital

maintains that it was never Scott's employer, the Court cannot decide this issue as a matter

of law because there are genuine issues of fact on whether the Hospital and Emcare acted as

Scott's joint employer.  There is also evidence suggesting that the Hospital interfered with

Scott's employment relationship with Emcare, which is another basis to hold it responsible

for the alleged discriminatory acts.

The Court concludes that Emcare is entitled to summary judgment on Scott's

retaliation claim (the only claim Scott asserts against Emcare) because Scott fails to show

*any* evidence of pretext to call into question Emcare's legitimate, nondiscriminatory decision

to remove her from the Hospital and terminate her contract.  It is undisputed that Emcare was

required to remove Scott from the Hospital at the Hospital's request per the applicable

contract.  It is also undisputed that Emcare was contractually permitted to terminate Scott's

employment with Emcare.  Scott does not point to anything in the record that shows or even

---

[1] Defendant West Florida Physician Network, LLC was dismissed with prejudice per the parties' Joint Motion to Dismiss (Dkt. 87).

suggests that Emcare's acts were related to the EEOC charge that Scott filed against the Hospital.

The Court now turns to the relevant facts.

## RELEVANT FACTS[2]

Plaintiff Dr. Michelle G. Scott is a medical doctor, specializing in internal medicine. During the relevant time, she practiced as a hospitalist. A hospitalist operates as a hospital-based "primary care physician," admitting patients and managing their treatment during hospital stays.

In July 2011, Scott relocated to Florida from Chicago, Illinois. On November 1, 2011, Scott entered into an employment agreement with Inpatient Services of Florida. Defendant Emcare, Inc. provides management services to Inpatient Services, including management of Inpatient's employment relationships with providers. Emcare is a healthcare company that contracts physician services to various healthcare entities and provides professional services and various specialties. The record is undisputed that Inpatient, who is not a party in this action, played no role in Scott's employment.

In November 2011, Emcare assigned Scott to work at Defendant Sarasota Doctors Hospital, Inc. ("Hospital") as a full-time hospitalist physician. Dr. Michael Schandorf is EmCare's site medical director for hospital medicine; he was Scott's supervisor during the relevant time. Schandorf's responsibilities included managing the full-time hospitalists. He

---

[2] These facts are interpreted in a light most favorable to Scott, the non-movant.

also administratively made sure that Emcare's programs, as well as the Hospital's programs, were implemented.  He was also involved in corrective or administrative action to correct any problems between physicians and patients.  Schandorf played several roles in the hospital administration as well.  He conducted Scott's initial interview.  After determining that she was a good fit for the Hospital, he recommended that the Hospital's administrative team interview her.  Robert Meade is the Hospital's CEO.  He attended Scott's interview and approved her employment at the Hospital.

Scott and the other physicians and medical staff placed at the Hospital by Emcare were reviewed by an evaluation committee that was comprised of individuals from Emcare and the Hospital.  The record reflects that the Hospital completed "Ongoing Professional Performance Evaluations" of Scott related to her employment.  Meade and Schandorf frequently communicated about the hospitalists' performance and any complaints received about them.  Schandorf served on the evaluation committee, which met on a  monthly basis. Meade was on this committee.  They, among other members of Emcare and the Hospital, discussed hospital metrics, physician performance, and staffing issues.  They had a "collaborative approach" to solving any problems.  (Schandorf at 18:4-13).

Scott worked at the Hospital, seven days on, seven days off, for a minimum of 180 hours per month.  Her typical day was described as arriving at the Hospital at 7:00 a.m., reviewing labs from the day before, reviewing patients' medical status from the prior night, reviewing x-rays, and seeing and admitting patients.  She would see between 18 and 24 patients a day.  She was also on the Hospital's infectious disease committee, the patient care

review committee, and, for a brief time, the cardiac surgery committee.  Other than her medical scrubs, which Emcare provided, the Hospital provided Scott any equipment, medications, supplies, and materials that she needed.  Emcare, not the Hospital, provided Scott with all of her compensation and benefits.  Scott testified that Emcare, not the Hospital, was her employer.

Schandorf interacted with Scott frequently—he testified that she was "a very experienced physician" and that she "knew what to do at a hospital." (Schandorf at 30:10-13).

In early 2012, Schandorf began receiving informal complaints about Scott that were of a general nature and mostly related to Scott sometimes acting abrupt, or too curt with patients and nurses.  Schandorf did not view the complaints as egregious; rather, they mostly related to the stressful environment that could cause a physician to act curt, abrupt, or rude.  The complaints were unrelated to Scott's medical knowledge or how she was managing patients.  Schandorf did not view the complaints as significant enough to report to the evaluation committee.

Schandorf and Meade had multiple conversations about Scott during Scott's employment at the Hospital.  Meade was aware of the informal complaints about Scott from other physicians and Hospital staff.  Specifically, Meade made his rounds once a week and heard complaints from others concerning Scott's curt and rude behavior.  He relayed two complaints about Scott to Schandorf that Schandorf was unaware of regarding Scott's treatment of a cancer patient and Scott's interaction with a nurse.  As a result of these two

complaints and the prior informal complaints, Meade had serious concerns about Scott being a good fit at the Hospital.  Schandorf told Meade that he would talk to Scott about the incidents.

As promised, Schandorf then talked to Scott about the two incidents.  Scott testified that this conversation occurred in February 2013.  She testified that Schandorf "gingerly" approached her and said: "Bob Meade wants you gone."  (Scott at 60:18-21).  Scott asked Schandorf to explain and Schandorf relayed the two incidents regarding the cancer patient and another incident that a physician witnessed and described as "just awful" but Schandorf did not explain the details of that incident further.  (Scott at 68:13-18).

With respect to the cancer patient, Scott explained to Schandorf that the patient was 83 years-old and was diagnosed with extremely advanced myelodysplastic syndrome, a condition that left the patient with no appreciable bone marrow.  Scott referred the patient to an oncologist who had previously treated the patient.  The oncologist recommended an aggressive regimen of chemotherapy that would not, according to Scott, "save the woman in any way, shape, or form" and, in fact, was "hastening [the patient's] demise and making her very miserable."  (Scott at 64:19 - 65:4).  Scott advised the patient of the true nature of her illness and told her that the chemotherapy would not be able to cure the underlying disease.  Scott testified that the patient was in denial about her condition and Scott was attempting to help her die with peace and dignity.

Scott admitted that her conversation with the patient upset the patient greatly.  As a result, the oncologist complained to Meade and requested that he replace Scott with another hospitalist for that patient.  The oncologist never discussed the matter directly with Scott.

After Scott explained the situation to Schandorf, Schandorf sympathized with Scott's position and acknowledged that the oncologist in question was "known to be extremely aggressive with chemotherapy" and "not to always give the details to the patients."  (Scott at 66:10-16).

With respect to the second incident, Scott did not remember a specific incident related to her treatment of a nurse.  Scott did tell Schandorf that she was under stress and that it was possible that she got upset at a nurse because her job was very stressful.  Scott also testified that at some point she had been upset at a nurse because the nurse lied to her about a patient.  But Scott stated that she did not raise her voice and she and the nurse actually had a "fabulous relationship."  (Scott at 72:14-15).

Schandorf testified that, following his discussions with Meade and Scott about the incidents with the oncologist and nurse, he and Meade may have had other conversations about Scott but no specific conversation stood out in his mind.  Schandorf testified that he liked Scott, thought she was a "great team player" and an "excellent physician" who "did whatever [he] asked her to do and more."  "[He] didn't want to lose her."  (Schandorf at 66:19-22).  Because he did not want to lose her, he considered an alternative arrangement: Scott could transition to a full-time hospitalist position at Blake Medical Center, where he and Scott were already working together in a part-time capacity.

Schandorf testified that Scott did not seem interested in a full-time position at Blake. Schandorf then shared with Scott that he was going to recommend that a full-time hospitalist replace Scott at the Hospital and then Scott could move into a part-time position at the Hospital.  Schandorf hoped this arrangement "would help solve the problem."  (Schandorf at 68:2-3).  Scott could then work part-time at the Hospital and Blake.  Although Schandorf did not think that the Hospital wanted Scott fired at this time, it was clear to Schandorf that the Hospital, particularly Meade, did not think that Scott fit the Hospital's culture.

According to Scott, she did not discuss any further issues with Schandorf about her employment at the Hospital after their February conversation other than Schandorf generally repeating that Meade wanted her fired from the Hospital.  She also did not receive any additional complaints about her behavior.  On August 1, 2013, however, she received an e-mail from Schandorf stating that she was going to be replaced by another doctor, Steve Unaeze, and would assume an as-needed position at the Hospital as of August 31, 2013.

After Scott received the August 1, 2013 e-mail, she testified that she did "nothing" in response to the e-mail, although she did have conversations with Schandorf and it appeared that Meade was maybe on the fence about her and Scott was hoping that Meade would move on and get over any earlier concerns that he had about her.

At some point after she received the August 1, 2013 e-mail, Schandorf informed Scott that Unaeze, the doctor that was going to replace her, reneged on his contract.  As such, Scott was permitted to stay at the Hospital full-time.  Then, about a week or two later, Schandorf approached Scott and informed her that he was interviewing another male doctor to replace

her.  Scott was upset and asked Schandorf: ". . . are they interviewing for my job still?  Are you kidding me?"  And [Schandorf] said "Yes."  (Scott at 82:16-22).  Scott then had a long conversation with Schandorf about how she believed the Hospital treated other male physicians more favorably and, in her opinion, this difference in treatment was based on her gender.

Specifically, Scott and Schandorf talked about another male doctor, also placed at the Hospital by Emcare, "Dr. M."  Scott was aware that Dr. M. had behavior issues during his employment at the Hospital.  Dr. M., however, was sent to anger management classes.  When the classes did not correct Dr. M.'s behavior, he was provided a ninety-day termination notice and then fired.

Schandorf and Meade testified that there were similar concerns about Scott and Dr. M.  Schandorf described the complaints about Dr. M. as follows: "Generally it had to do with angry outbursts, use of sometimes offensive language or foul language directed at staff, threatening nature, those sorts of things."  (Schandorf at 60:1-4).  Dr. M. was discussed at the level of the evaluation committee.  The discussions related to how Dr. M. interacted with people, the language he used, and his angry outbursts that were "sometimes threatening . . . to the extent that the nurses were afraid to call him in the middle of the night because they were afraid of how he would respond to them."  (Schandorf at 61:2-25).  Dr. M.'s behavior impacted patient care.  Schandorf stated that he could not recall any complaints about Scott's behavior that impacted patient care.

Schandorf discussed Dr. M.'s behavior and the complaints about him with Meade "multiple times"; Meade did not offer any suggestions as to how to deal with Dr. M. and deferred entirely to Schandorf to handle the complaints.  (Schandorf at 83:1-17).  It is undisputed that, although the Hospital was fully aware of the complaints about Dr. M., the Hospital did not play any role in the ultimate decision to terminate Dr. M.

In addition to Scott's belief that Dr. M. was treated more favorably than she, to the extent that he was provided opportunities to correct his behavior, Scott also told Schandorf that, during her time on the patient care review committee, she reviewed multiple complaints about male physicians for behavior, such as not signing charts, being late, etc., and that these physicians were provided an opportunity to respond to the complaints.  Scott, in comparison, was never given a formal complaint about her behavior or provided the opportunity to respond to any complaints.

Regarding her belief that her gender was the reason why she was being treated differently, Scott testified that Schandorf responded that "they" could fire her "at will." (Scott at 84:5-6).

After this conversation with Schandorf, Scott contacted a lawyer and decided to file a charge of gender discrimination against the Hospital.  Specifically, on September 23, 2013, Scott's charge was filed with the Florida Commission on Human Relations.  The charge was solely against the Hospital for gender discrimination.  The charge stated that Meade was subjecting her to gender discrimination to the extent that he was treating her differently than male comparators with respect to the conditions of her employment.

The record is undisputed that Scott did not file a charge of gender discrimination against Emcare.  And Scott testified consistently during her deposition that she was not pursuing a gender discrimination claim against Emcare.

On October 3, 2013, Scott returned to the Hospital, after being seven days off per her typical work schedule.  That morning, Schandorf approached her and suggested that she take an open hospitalist position that had become available in Venice, Florida.  Scott asked Schandorf if he was aware of her September 23 charge against the Hospital and asked him if the Hospital was taking it seriously.  Schandorf told her that he was not aware of the September 23 charge.

Scott, upset that the Hospital was not investigating her charge, called her lawyer and, on her lawyer's advice, went to the Hospital's human resources department ("HR").  Scott asked June Ripley, the Hospital's HR generalist about the charge and Ripley told her that she did not know about it.  Scott told Ripley about the charge and encouraged her to investigate it.  Scott acknowledged that she was upset during this conversation with Ripley.  She said the conversation lasted maybe five or ten minutes.  Scott then returned to work.

Later that day, Schandorf approached Scott and told her that Meade instructed him to escort her out of the building and take her badge based on something that happened in the HR office.  While they were walking out, Schandorf asked her what happened in HR.  Scott said that she had complained that HR was not investigating her charge of discrimination.  According to Scott, Schandorf said: "Michelle, we weren't going to fire you anyway." (Scott at 99:10-11).  Scott then left the Hospital.

The next day, on October 4, 2013, Scott received a telephone call from Ted Haumesser, Emcare's director of client administration.  Haumesser informed Scott that Emcare was firing her.  Scott then asked him if he was aware that she had filed an EEOC charge against the Hospital and Haumesser responded "I don't know anything about that and I don't care."  Scott responded that she would add Emcare to the lawsuit.  (Scott at 100:18-24).

After the telephone conversation with Haumesser, Scott received a termination letter from Emcare that stated, in relevant part:

> Due to the ongoing behavioral concerns and your contentious interactions with staff and patients, this letter shall constitute formal notice of Company's decision to terminate your Agreement pursuant to Section 10.A.(iii).9, which authorizes the Company to terminate the Agreement upon request from the hospital.  Your termination will be effective on October 3, 2013.

(Scott at Ex. 7).

On October 7, 2013, Scott filed an additional charge against the Hospital and her first charge against Emcare for retaliation related to her termination.  This action then followed.

The Hospital contends that the prior complaints about Scott, coupled with the HR incident, prompted Scott's termination.  Specifically, after Scott left the HR office, Ripley reported her interaction with Scott to Theresa Levering, the Hospital's vice president of HR.  Notably, at that time, Levering was aware of the EEOC charge.  And it is undisputed that Levering had told Meade about the charge and that he was specifically named in it.

After meeting with Levering and talking with Ripley, Meade called Joel Stern, Emcare's executive vice president who managed Emcare's contracts with hospitals,[3] and asked him to have Scott permanently removed from the Hospital because Scott had engaged in inappropriate behavior in the Hospital's HR department.  In a follow-up e-mail to Stern, Meade stated: "Due to ongoing behavior issues with [Scott], I am requesting that she be removed from our facility.  Her behavior in our HR department this morning coupled with numerous contentious interactions with staff and patients lead us to believe that she is not a fit with our culture here at [the Hospital]."  (Stern at Ex. G).

The record reflects that the contract between Emcare and the Hospital required Emcare to remove any medical provider from the Hospital at the Hospital's request.  The record also reflects that Scott's agreement with Emcare authorized Emcare to terminate the agreement with Scott immediately "[i]n the event that the appropriate authorities of a hospital at which Employee is providing services request that Employee no longer provide such services at the hospital."  (Declaration of John M. Barr at Exhibit 1, p. 10).  It is undisputed that the Hospital never requested that Emcare remove Dr. M. from the Hospital.

The Court now turns to the relevant law.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[3] Notably, Stern and Meade would talk every two weeks, if not more, about recruiting, staffing, and performance, related to the operations of the hospitalist and emergency medicine service lines.  He was one of the primary contacts between Emcare and the Hospital.

show there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  The existence of some factual disputes between the litigants will not defeat an

otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (emphasis in original).  The substantive law applicable to the claimed causes of action

will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences

in its favor.  *Id.* at 255.

      Once a party properly makes a summary judgment motion by demonstrating the

absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The evidence must be

significantly probative to support the claims.  *Anderson*, 477 U.S. at 248-49 (1986).

      This Court may not decide a genuine factual dispute at the summary judgment stage.

*Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*

*Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a

material fact is genuine and summary judgment is inappropriate if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248;

*Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question.   *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

### I.   The Hospital's Argument That It Was Not Scott's "Employer"

The Hospital argues that it is entitled to summary judgment on all of Scott's claims because it was not Scott's employer.   Title VII, by its terms, applies only to "employees," 42 U.S.C. § 2000e(f), but the statute defines an employee circularly as "an individual employed by an employer."   *Id.*   "Based in part on a doctor's ability to control the manner in which the doctor provides his or her services, many circuits evaluating employment discrimination claims by doctors against hospitals have found that the doctors were independent contractors and not employees."   *Ashkenazi v. S. Broward Hosp. Dist.*, 607 F. App'x 958, 962-63 (11th Cir. 2015) (listing cases).

To analyze whether an employment relationship exists, courts consider the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the

worker accumulates retirement benefits; (10) whether the 'employer'
pays Social Security taxes; and (11) the intention of the parties.

*Pardazi v. Cullman Med. Ctr.*, 838 F.2d 1155, 1156 (11th Cir. 1988).  "[N]o one factor is

determinative."  *Ashkenazi*, 607 F. App'x at 962.  "A doctor's exercise of professional

judgment about a patient's medical care is not a dispositive factor in this analysis; otherwise,

all physicians would be 'carve[d] out, ... as a category, from the protections of the

antidiscrimination statutes.'"  *Id.* (quoting *Salamon v. Our Lady of Victory Hosp.,* 514 F.3d

217, 228-29 (2d Cir. 2008)).  "The extent of the employer's right to control the 'means and

manner' of the worker's performance is the most important factor to review."  *Id.*

      Further, the Eleventh Circuit has also instructed that when discrimination is based on

an adverse employment decision, the district court must look beyond a mere corporate shield

and analyze a joint employer theory that "concentrate[s] on the degree of control an entity

has over the adverse employment decision on which the Title VII suit is based."  *Llampallas*

*v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998).

      Finally, Title VII makes it unlawful for an employer to "discriminate against any

*individual* with respect to his compensation, terms, conditions, or *privileges of employment*."

42 U.S.C. § 2000e-2(a) (emphasis added).  "It is clear from the language of the statute that

Congress intended that the rights and obligations it created under Title VII would extend

beyond the immediate employer-employee relationship."  *Zaklama v. Mt. Sinai Med. Ctr.,*

842 F.2d 291, 294 (11th Cir. 1988).  Therefore, courts have found that the statute extends to

the situation in which a defendant controls, and has interfered with, an individual's

employment relationship with a third party. *See id.;Pardazi v. Cullman Med. Ctr.,* 838 F.2d 1155, 1156 (11th Cir. 1988) (permitting the plaintiff to proceed with his claim that the defendant hospital interfered with his employment opportunities with a third party professional corporation).

Analyzing the evidence in a light most favorable to Scott, there is certainly an issue of fact on the issue of whether the Hospital and Emcare operated as a single employer with respect to Scott. The Hospital and Emcare jointly hired Scott as a hospitalist. The Hospital and Emcare met frequently to discuss the hospitalists' (and Scott's) performance. The Hospital reviewed Scott's performance and Emcare relied on the Hospital to monitor the performance of the Emcare-placed physicians. Scott served on three of the Hospital's committees. The Hospital and Emcare collaborated on any problems/concerns dealing with the hospitalists. Meade and Schandorf testified, at length, about this collaborative approach and their joint management of Scott and other Emcare-placed physicians.

The Hospital also exercised tremendous countrol over the adverse employment action that is the subject of this lawsuit. It is undisputed that Meade made the decision to have Scott removed from the Hospital. Meade's actions resulted, not only in Scott's removal from the Hospital, but in the termination of her contract with Emcare. These facts are sufficient to create an issue of fact on whether the Hospital can be treated, for all intents and purposes, as Scott's "employer." Accordingly, the Hospital's motion is denied with respect to this issue.

## II.      Scott's Gender Discrimination Claims against the Hospital

### A.      Relevant Law

The Hospital argues that, even assuming for the sake of argument that it was Scott's employer during the relevant time, Scott's gender discrimination claims fail as a matter of law.  Title VII and the FCRA prohibit employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1).  A plaintiff may establish a prima facie case of discrimination through either direct or circumstantial evidence.  *See Jackson v. Rooms To Go, Inc.*, No. 8:06-cv-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).  Because the record is clear that there is no direct evidence of discrimination, Scott must prove her claim through the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this framework, Scott must first establish a prima facie case of employment discrimination.  *See id.*  If Scott establishes a prima facie case, the burden then shifts to the Hospital to articulate some legitimate, nondiscriminatory reason for the employment action.  *Id.*  If the Hospital meets this burden of production, the presumption of discrimination raised by Scott's prima facie case is rebutted.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  Scott must then show that the Hospital's proffered legitimate, nondiscriminatory reason is pretextual.  *Id.*

**B.     Prima Facie Case**

In order to establish her prima facie case of gender discrimination, Scott must show that: (1) she is a member of a protected class (female); (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) the Hospital treated similarly-situated males more favorably.  *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000).

The Hospital assumes that Scott can establish the first three factors; the Hospital argues, however, that Scott cannot show that the Hospital treated a similarly-situated male more favorably.  The Court disagrees.  In the context of disciplinary action, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999).  "[I]t is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holified v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997); *see also Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1281 (11th Cir. 2008) ("The most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishment imposed.").

The record reflects that both Schandorf and Meade viewed Dr. M.'s misconduct, another Emcare-placed physician, as similar to Scott's misconduct.  Indeed, they both used the term "similar" in their deposition testimony to describe the complaints about the two

physicians.  As Scott points out, there is even evidence suggesting that Dr. M.'s misconduct was more severe and serious than Scott's misconduct.  Despite this evidence, Dr. M. was treated more favorably.  He received counseling, was sent to anger management classes, and, after all of these attempts failed, provided a ninety-day termination notice.

The Hospital attempts to avoid any responsibility with respect to Dr. M.'s treatment because Meade relied entirely on Schandorf to handle the complaints about Dr. M.  But if this logic is assumed and followed, it does not result in a favorable outcome for the Hospital. Schandorf testified that Dr. M. had angry outbursts, was sometimes threatening, and that nurses, among others, were afraid of him.  Meade was aware of these complaints about Dr. M. but did not decide to have Dr. M. removed from the Hospital.  A jury could find that Meade treated Dr. M. more favorably when Dr. M. arguably exhibited worse conduct in the Hospital than Scott.  For example, a jury could question why Meade, on one hand, sat back and did nothing about Dr. M.'s outrageous conduct and then, on the other hand, demanded Scott's removal based on her behavior in the Hospital's HR office.

It is also important to note that it is entirely unclear in the record what exactly occurred in the HR office.  The Court must assume Scott's version of the facts.  And according to Scott, she may have been upset and her voice may have been loud but she was in an HR office where such behavior should be more accepting.  Scott denies that she "made a scene."

In sum, Scott has pointed to sufficient evidence to establish that the Hospital treated Dr. M., a similarly-situated male, more favorably.  The Hospital's argument that it had

nothing to do with Dr. M.'s discipline and punishment does not advance its position—the inaction with respect to Dr. M.'s conduct calls into question the true reason behind the Hospital's request to have Scott removed.

### C.   The Hospital's Argument That Scott Cannot Establish Pretext

The Hospital next argues that, even if Scott can establish a prima facie case of gender discrimination, Scott cannot rebut the Hospital's legitimate, non-discriminatory reasons for requesting her removal from the Hospital: Meade asked Emcare to remove Scott based on Scott's egregious conduct in the HR department "coupled with numerous contentious interactions with staff and patients" and lack of fit with the Hospital's culture of care.  The Court disagrees.

Scott may show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Hospital's proffered reasons.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted).  Notably, Scott may also use evidence that similarly-situated male employees were treated more favorably to establish both a prima facie case and pretext.  *See Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013) ("A typical means of establishing pretext is through comparator evidence.") (citing *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1563 n. 20 (11th Cir. 1987)).

Scott has sufficiently rebutted the Hospital's reasons for the same reasons that the Court discusses under the analysis related to Scott's prima facie case, i.e., that Meade chose

to treat Dr. M. more favorably by not seeking his removal from the Hospital, despite the fact that Dr. M. committed offenses that were arguably more severe than the past complaints about Scott and Scott's behavior in the HR office.  Notably, it is also disputed in the record whether Scott's behavior in the HR office was "egregious."  And the purported "numerous contentious interactions with staff and patients" is belied by the fact that Scott was never formally counseled on these incidents or provided with an opportunity to respond in any way.

Accordingly, the Hospital's motion is denied with respect to the gender discrimination claims.

## III.   Scott's Gender Discrimination Claims against Emcare

Emcare argues that Scott waived any gender discrimination claims against it because she never filed a charge of gender discrimination against Emcare and she acknowledged during her deposition that she was not pursuing such a claim against Emcare.  The Court agrees that Scott's claims against Emcare are premised solely on retaliation.  Indeed, Scott's response to Emcare's motion is silent on this issue and does not even attempt to argue that Scott has a gender discrimination claim against Emcare.  This tacit agreement is further proof that such a claim does not exist.  Accordingly, Emcare is granted summary judgment on any purported gender discrimination claims.

## IV.   Scott's Retaliation Claims against the Hospital and Emcare

Scott alleges that the Hospital's request to have her removed and Emcare's termination of her contract were motivated by the charge of discrimination she filed against the Hospital.  It is undisputed that the Hospital knew about Scott's charge of discrimination

against it at the time that Meade requested her removal from the Hospital approximately one week after she filed the charge. The Hospital and Emcare argue, however, that they are both entitled to summary judgment on Scott's retaliation claims.

### A.    Relevant Law

In order to establish a prima facie case of retaliation, Scott must show that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse employment action, and (3) there is a causal relationship between the protected activity and the adverse employment action. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). A plaintiff must also demonstrate "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *see also Smith v. City of Fort Pierce*, 565 F. App'x 774, 778 (11th Cir. 2014). Once a plaintiff establishes a prima facie case of retaliation, the employer has an opportunity to articulate a nonretaliatory reason for its action, which can then be rebutted by the employee by evidence of pretext. *See Brown*, 597 F.3d at 1181-82.

A plaintiff can establish a causal connection by showing that the defendant was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). Generally, in the absence of other evidence, an employee can establish a causal connection by showing a "very close" temporal proximity between the protected activity and the adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

### B.    Prima Facie Case

Here, Scott has clearly established a prima facie case against both the Hospital and Emcare; the record suggests that both were aware of her charge of discrimination at the time that she was removed from the Hospital and at the time that Emcare terminated her contract. Moreover, the temporal proximity is the essence of "very close" because the adverse actions occurred approximately one week after she filed her charge.

### C.    The Hospital's Argument That Scott Cannot Show Pretext

The Hospital's pretext argument is nearly identical to its pretext argument under the gender discrimination claims and fails for the same reasons.  The Hospital also contends that Scott's charge of discrimination had nothing to do with its decision to request her removal because it had planned on removing her *before* the charge was filed based on the past complaints against her.  There are disputed facts in the record on this issue.  There is evidence that, prior to the time that Scott filed the charge of discrimination, Meade was on the fence about removing Scott.  Moreover, the Hospital never formally counseled Scott about the past complaints.

It is also disputed whether Scott's behavior in the HR office was "outrageous." Finally, as already explained, the Hospital's reasons are contradicted by the more favorable treatment of Dr. M.  Accordingly, the Hospital's motion is denied with respect to Scott's retaliation claims.

### D.  Emcare's Argument That Scott Cannot Show Pretext

Emcare argues that it had legitimate non-discriminatory reasons to remove Scott from the Hospital and terminate Scott's contract with Emcare.  Meade demanded Scott's removal, a directive that Emcare had to follow under its contract with the Hospital.  Further, once Scott was removed at the Hospital's request, her contract with Emcare permitted her immediate termination.  There is simply no evidence in the record that calls into question Emcare's actions.  Scott may point to Emcare's different treatment towards Dr. M., but it is undisputed in the record that the Hospital did not demand Dr. M.'s removal.  In other words, there is nothing to call into question the fact that Emcare had to remove Scott immediately upon the Hospital's demand.

In sum, with respect to Emcare, Scott does not point to any evidence of pretext.  Notably, the charge of discrimination was not even against Emcare.  Accordingly, Emcare is entitled to summary judgment on Scott's retaliation claims.

It is therefore **ORDERED AND ADJUDGED** that:

1.    Defendant Sarasota Doctors Hospital, Inc.'s Motion for Summary Judgment (Dkt. 64) is denied.

2.    EmCare, Inc.'s Motion for Summary Judgment (Dkt. 66) is granted.

3.      The Clerk is directed to enter final judgment in favor of Emcare, Inc. and

against Plaintiff.

**DONE** and **ORDERED** in Tampa, Florida on November 5, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**<u>Copies furnished to:</u>**
Counsel/Parties of Record

S:\Even\2014\14-cv-1762.msj-gender-retaliation-employerissue-64and66.wpd

Page 26 of  26

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MICHELLE G. SCOTT,**

    **Plaintiff,**

**v.**              **Case No:  8:14-cv-1762-T-30TBM**

**SARASOTA DOCTORS HOSPITAL,
INC., a Florida Corporation,
EMCARE, INC., a Foreign Profit
Corporation doing business in the
State of Florida, and JOHN DOES 1-
10,**

    **Defendants.**
_____

## JUDGMENT IN A CIVIL CASE

**Decision by Court.** This action came before the Court and a decision has been rendered.

  **IT IS ORDERED AND ADJUDGED**

  Pursuant to Order of the Court , Final Judgment  is entered in favor of Emcare, Inc. and

against Plaintiff.

        SHERYL L. LOESCH, CLERK

        s/K. M., Deputy Clerk

**CIVIL APPEALS JURISDICTION CHECKLIST**                                            APPENDIX

1.     <u>Appealable Orders</u>: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)    **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Pitney Bowes, Inc. V. Mestre</u>, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)    **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), <u>Williams v. Bishop</u>, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 837 (11th Cir. 1998).

    (c)    **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)    **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)    **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: <u>Cohen V. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); <u>Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.</u>, 890 F. 2d 371, 376 (11th Cir. 1989); <u>Gillespie v. United States Steel Corp.</u>, 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.     <u>Time for Filing:</u> The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.     <u>Format of the notice of appeal</u>: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See also</u> Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.     <u>Effect of a notice of appeal</u>: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DR. MICHELLE G. SCOTT,

     Plaintiff,

v.                                                  Case No. 8:14-CV-1762-T-30TBM

SARASOTA DOCTORS HOSPITAL,
INC., a Florida Corporation doing
Business as Doctors Hospital of
Sarasota,

     Defendant.

_____/

## **VERDICT FORM**

Do you find from a preponderance of the evidence:

    1.    That Doctors Hospital was a joint employer of Dr. Scott?

Answer Yes or No     _No_____

    If your answer is "No" to question 1 this ends your deliberations, and your

foreperson should sign and date the last page of this verdict form. If your answer is

"Yes," go to the next question.

    2.    That Doctors Hospital terminated Dr. Scott from employment?

Answer Yes or No     _____

1

If your answer is "No" to question 2 this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

3.      That Dr. Scott being female was a motivating factor that prompted Doctors Hospital to terminate Dr. Scott from employment?

Answer Yes or No            _____

If your answer is "No" to question 3, skip to question 6.  If your answer is "Yes," go to the next question.

4.      That Dr. Scott should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?

Answer Yes or No            _____

If your answer is "No" to question 4, skip to question 6.

5.      If your answer is "Yes,"

in what amount?            $_____

6.      That Dr. Scott had a good faith, reasonable belief that Doctors Hospital was discriminating against her on the basis of her gender when she filed her Charge of Discrimination with the EEOC?

Answer Yes or No            _____

2

If your answer is "No" to Question No. 6, skip to Question No. 10. If your answer is "Yes," go to the next question.

7.     That Doctors Hospital terminated Dr. Scott because she filed an EEOC Charge?

Answer Yes or No            _____

If your answer is "No" to Question No. 7, skip to Question No. 10. If your answer is "Yes," go to the next question.

8.     That Dr. Scott should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?

Answer Yes or No            _____

If your answer is "No" to question 8, skip to question 10.

9.     If your answer is "Yes,"

in what amount?            $_____

If you did not award damages in response to Question No. 4 or 8, this will end your deliberations, and your foreperson should go to the end of this verdict form to sign and date it. If you awarded damages in response to either Question No. 4 or 8, or both, go to the next question.

10. That punitive damages should be assessed against Doctors Hospital?

Answer Yes or No          _____

11. If your answer is "Yes,"

in what amount?          $_____

This ends your deliberations.  Your foreperson should sign and date the last page of this verdict form.

So Say We All.

_____
Foreperson's Signature

Date: __1/22/16__

S:\Even\2014\14-cv-1762 VERDICT FORM.docx

USCA11 Case: 16-10763     Document: 29     Date Filed: 05/23/2016     Page: 106 of 131

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DR. MICHELLE G. SCOTT,

     Plaintiff,

v.                                                      CASE NO:  8:14-cv-1762-T-30TBM

SARASOTA DOCTORS HOSPITAL, INC.,
A FLORIDA CORPORATION D/B/A
DOCTORS HOSPITAL OF SARASOTA,

     Defendants.

_____/


### COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

## JURY INSTRUCTION NO. 1

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Page: 108 of 131      Date Filed: 05/23/2016      Document: 29      USCA11 Case: 16-10763

### JURY INSTRUCTION NO. 2

#### 3.3 Consideration of Direct and Circumstantial Evidence;
#### Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## JURY INSTRUCTION NO. 3

### 3.4 Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 110 of 131

## JURY INSTRUCTION NO. 4

**3.5.1 Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

USCA11 Case: 16-10763    Document: 29    Date Filed: 05/23/2016    Page: 111 of 131

## JURY INSTRUCTION NO. 5

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of Dr. Scott to prove every essential part of her claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Dr. Scott's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Dr. Scott.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Dr. Scott's claim[s] by a preponderance of the evidence, you should find for Doctors Hospital as to that claim.

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 112 of 131

## JURY INSTRUCTION NO. 6

### 3.7.2 Responsibility for Proof - Affirmative Defense
### Preponderance of the Evidence

In this case, Doctors Hospital asserts the affirmative defense[s] of "same decision" meaning that Doctors Hospital would have made the same decision regarding removal of Dr. Scott regardless of her sex and "failure to mitigate damages" meaning, should you find in Dr. Scott's favor, that any damages you may award Dr. Scott must be reduced by the amount that Dr. Scott could have earned with reasonable diligence after her discharge. Even if Dr. Scott proves her claim[s] by a preponderance of the evidence, Doctors Hospital can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Doctors Hospital does not have to disprove Dr. Scott's claim[s], but if Doctors Hospital raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

USCA11 Case: 16-10763     Document: 29     Date Filed: 05/23/2016     Page: 113 of 131

## JURY INSTRUCTION NO. 7

### 4.25 Miscellaneous Issues - Joint Employers

It is not always clear whether the law considers someone an "employee," and it is not always clear who the law considers someone's "employer." Some people, for example, perform services for others while remaining self-employed or employed by another entity as independent contractors. Others are clearly employees. But it may not always be clear who is an employer of the employee. Sometimes an employee may have more than one employer at the same time.

So, in this case, you must decide: Was Dr. Scott an employee of Doctors Hospital as well as an employee of EmCare, Inc.? You should answer this question in light of the economic realities of the entire relationship between the parties based on the evidence.

Consider all the following factors to the extent you decide that each applies to this case:

(a)   the nature and degree of control over the employee and who exercises that control;

(b)   the degree of supervision, direct or indirect, over the employee's work and who exercises that supervision;

(c)   who exercises the power to determine the employee's pay rate or method of payment;

(d)   who has the right, directly or indirectly, to hire, fire, or modify the employee's employment conditions;

(e)   who is responsible for preparing the payroll and paying wages;

(f)   who made the investment in the equipment and facilities the employee uses;

(g)   who has the opportunity for profit and loss;

USCA11 Case: 16-10763    Document: 29    Date Filed: 05/23/2016    Page: 114 of 131

(h)     the employment's permanence and exclusiveness;

(i)     the degree of skill the job requires;

(j)     the ownership of the property or facilities where the employee works; and

(k)     the performance of a speciality job within the production line integral to the business.

Consideration of all the circumstances surrounding the work relationship is essential. No single factor is determinative. Nevertheless, the extent of the right to control the means and manner of the worker's performance is the most important factor.

USCA11 Case: 16-10763 Document: 29 Date Filed: 05/23/2016 Page: 115 of 131

## JURY INSTRUCTION NO. 8

### 4.5 Title VII – Civil Rights Act – Discrimination – Discharge or Failure to Promote – Including "Same Decision" Defense

In this case, Dr. Scott claims that Doctors Hospital violated the Federal and State Civil Rights statutes that prohibit employers from discriminating against employees in the terms and conditions of employment because of their sex.

Specifically, Dr. Scott claims that Doctors Hospital asked EmCare to remove her from Doctors Hospital and to terminate her assignment to provide services at Doctors Hospital because of her sex.

Doctors Hospital denies Dr. Scott's claims and asserts that it asked EmCare to withdraw Dr. Scott's assignment to provide services at Doctors Hospital for legitimate business reasons and as a result of complaints regarding Dr. Scott's behavior toward patients, other physicians and staff.

To succeed on her claim against Doctors Hospital, Dr. Scott must prove each of the following facts by a preponderance of the evidence:

First: Doctors Hospital discharged Dr. Scott; and

Second: Dr. Scott's sex was a motivating factor that prompted Doctors Hospital to discharge Dr. Scott.

[In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.]

If you find that Doctors Hospital discharged Dr. Scott from employment, you must decide whether Dr. Scott's sex was a "motivating factor" in the decision.

USCA11 Case: 16-10763     Document: 29     Date Filed: 05/23/2016     Page: 116 of 131

To prove that sex was a motivating factor in Doctors Hospital's decision, Dr. Scott does not have to prove that her sex was the only reason that Doctors Hospital discharged her from employment. It is enough if Dr. Scott proves that sex influenced the decision. If Dr. Scott's sex made a difference in Doctors Hospital's decision, you may find that it was a motivating factor in the decision.

Doctors Hospital claims that Dr. Scott's sex was not a motivating factor in the decision and that it asked EmCare to withdraw her assignment to provide services at Doctors Hospital for other reasons. An employer may not discriminate against an employee because of the employee's sex, but the employer may discharge an employee for any other reason, good or bad, fair or unfair. If you believe Doctors Hospital's reason[s] for the decision to discharge Dr. Scott, and you find that Doctors Hospital's decision was not motivated by Dr. Scott's sex, you must not second guess Doctors Hospital's decision, and you must not substitute your own judgment for Doctors Hospital's judgment – even if you disagree with it.

As I have explained, Dr. Scott has the burden to prove that her sex was a motivating factor in Doctors Hospital's decision to remove Dr. Scott from service at Doctors Hospital. I have explained to you that evidence can be direct or circumstantial. To decide whether Dr. Scott's sex was a motivating factor in Doctors Hospital's decision to request Dr. Scott's removal, you may consider the circumstances of Doctors Hospital's decision. For example, you may consider whether you believe the reason[s] Doctors Hospital gave for the decision. If you do not believe the reason[s] it gave for the decision, you may consider whether the

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 117 of 131

reason[s] [was/were] so unbelievable that [it was/they were] a cover-up to hide the true discriminatory reasons for the decision.

112

## JURY INSTRUCTION 9

### 4.22 Retaliation—Title VII, ADEA, ADA and FLSA

In this case, Dr. Scott claims that Doctors Hospital retaliated against her because she took steps to enforce her lawful rights under Title VII and the Florida Civil Rights Act.

Laws that prohibit discrimination in the workplace also prohibit an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws.

An employee may make a discrimination complaint as a means to enforce what she believed in good faith to be her lawful rights. So, even if a complaint of discrimination against an employer is later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such a complaint, if you find that the employee made the complaint as a means of seeking to enforce what the employee believed in good faith to be her lawful rights. To establish "good faith," however, it is insufficient for Dr. Scott merely to allege that her belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable.

Dr. Scott claims that Doctors Hospital asked EmCare to remove her from providing services at Doctors Hospital because she opposed alleged unlawful treatment of her.

Doctors Hospital denies Dr. Scott's claim and asserts that it asked EmCare to terminate Dr. Scott's assignment at Doctors Hospital for legitimate, non-retaliatory reasons.

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 118 of 131

To succeed on her claim, Dr. Scott must prove each of the following facts by a preponderance of the evidence:

First:   Dr. Scott engaged in a protected activity;

Second:   Doctors Hospital then took an adverse employment action;

Third:   Doctors Hospital took the adverse employment action because of Dr. Scott's protected activity; and

Fourth:   Dr. Scott suffered damages because of the adverse employment action.

[In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.]

For the first element, Dr. Scott claims that she engaged in protected activity when she filed her charge of discrimination with the EEOC alleging that the Hospital discriminated against her on the basis of her gender. You should find that Dr. Scott's filing of her charge of discrimination is "protected activity" if it was based on Dr. Scott's good-faith, reasonable belief that Doctors Hospital discriminated against her because of her sex. Dr. Scott had a "good faith" belief if she honestly believed that Doctors Hospital discriminated against her because of sex. Dr. Scott had a "reasonable" belief if a reasonable person would, under the circumstances, believe that Doctors Hospital discriminated against Dr. Scott because of her sex. Dr. Scott does not have to prove that Doctors Hospital actually discriminated against her because of her sex. But she must prove that she had a good-faith, reasonable belief that Doctors Hospital did so.

For the second element, Dr. Scott claims that Doctors Hospital took an adverse employment action against her when Doctors Hospital asked EmCare to terminate her

APPENDIX 8

assignment to Doctors Hospital. You must decide whether the termination of her assignment at Doctors Hospital is an adverse employment action.

An "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination. Put another way, if a reasonable employee would be less likely to complain about or oppose alleged discrimination because she knew that Doctors Hospital would request termination of her assignment at the Hospital, then that action is an adverse employment action. If the employment action would not make it less likely for a reasonable employee to make complaints about or oppose the alleged discrimination, it is not an adverse employment action.

For the third element, if you find that Dr. Scott engaged in protected activity and that Doctors Hospital took an adverse employment action against her, you must decide whether Doctors Hospital took that action because of Dr. Scott's protected activity. Put another way, you must decide whether Dr. Scott's protected activity was the main reason for Doctors Hospital's decision. To determine that Doctors Hospital took an adverse employment action because of Dr. Scott's protected activity, you must decide that Doctors Hospital would not have taken the action had Dr. Scott not engaged in the protected activity but everything else had been the same.

Doctors Hospital claims that it did not request Dr. Scott's removal because of her charge with the EEOC and that it took the action for other reasons. An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may terminate an employee for any other reason, good or bad, fair or

unfair. If you believe Doctors Hospital's reason[s] for its decision, and you find that Doctors Hospital did not make its decision because of Dr. Scott's protected activity, you must not second guess that decision, and you must not substitute your own judgment for Doctors Hospital's judgment – even if you do not agree with it.

As I have explained, Dr. Scott has the burden to prove that Doctors Hospital's decision to terminate her services at Doctors Hospital was because of her protected activity. I have explained to you that evidence can be direct or circumstantial.

To decide whether Doctors Hospital's termination of Dr. Scott's assignment was because of her protected activity, you may consider the circumstances of Doctors Hospital's decision. For example, you may consider whether you believe the reason[s] that Doctors Hospital gave for the decision. If you do not believe the reason[s] that it gave for the decision, you may consider whether the reason[s] [was/were] so unbelievable that [it was/they were] a cover-up to hide the true retaliatory reasons for the decision.

For the fourth element, you must decide whether Doctors Hospital's acts were the proximate cause of damages that Dr. Scott sustained. Put another way, you must decide, if Doctors Hospital had not requested that Emcare terminate Dr. Scott's assignment to provide services at Doctors Hospital, would these damages have occurred?

If you find that Doctors Hospital's acts were the proximate cause of damages that Dr. Scott sustained, you must determine the amount of damages.

APPENDIX 8

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 122 of 131

## JURY INSTRUCTION NO. 10

### 4.5 Title VII – Civil Rights Act – Discrimination – Discharge or Failure to Promote – Including "Same Decision" Defense

### Damages

When considering the issue of Dr. Scott's compensatory damages, you should determine what amount, if any, has been proven by Dr. Scott by a preponderance of the evidence is full, just and reasonable compensation for all of Dr. Scott's damages as a result of the discharge, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize a defendant.  Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Dr. Scott has proved them by a preponderance of the evidence, and no others:

      (a)    Net lost wages and benefits from the date of discharge to the date of your verdict.

To determine the amount of Dr. Scott's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Dr. Scott to be reasonably diligent in seeking substantially equivalent employment to the position she held at Doctors Hospital.  To prove that Dr. Scott failed to mitigate damages, Doctors Hospital must prove

by a preponderance of the evidence that: (1) work comparable to the position held by Dr. Scott held at Doctors Hospital was available, and (2) Dr. Scott did not make reasonably diligent efforts to obtain it. If, however, a Defendant shows that Dr. Scott did not make reasonable efforts to obtain any work, then the Defendant does not have to prove that comparable work was available.

If you find that the Defendant proved by a preponderance of the evidence that Dr. Scott failed to mitigate damages, then you should reduce the amount of Dr. Scott's damages by the amount that could have been reasonably realized if she had taken advantage of an opportunity for substantially equivalent employment.

Dr. Scott also asks you to award punitive damages. The purpose of punitive damages is not to compensate Dr. Scott but, instead, to punish a defendant for wrongful conduct and to deter similar wrongful conduct. You will only reach the issue of punitive damages if you find for Dr. Scott and award her compensatory damages.

To be entitled to an award of punitive damages against Doctors Hospital, Dr. Scott must prove by a preponderance of the evidence that Doctors Hospital acted with either malice or with reckless indifference toward her federally protected rights. Specifically, Dr. Scott must show that an employee of Doctors Hospital, acting in a managerial capacity, either acted with malice or with reckless indifference to her federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority given to the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 123 of 131

USCA11 Case: 16-10763     Document: 29     Date Filed: 05/23/2016     Page: 124 of 131

To show that Doctors Hospital acted with malice, Dr. Scott must show that an employee acting in a managerial capacity knew or that federal law prohibits discrimination and discriminated against Dr. Scott anyway.  To show that Doctors Hospital acted with reckless indifference to Dr. Scott's federally protected rights, Dr. Scott must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law.  Either malice or reckless indifference is sufficient to entitle Dr. Scott to an award of punitive damages; Dr. Scott need not prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace.  However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether Doctors Hospital acted with malice or reckless indifference to Dr. Scott's federally protected rights.  In determining whether to award punitive damages, you may consider factors such as: (1) whether Doctors Hospital engaged in a pattern of discrimination toward its employees; (2) whether Doctors Hospital acted spitefully or malevolently; (3) whether Doctors Hospital showed blatant disregard for civil legal obligations; (4) whether Doctors Hospital failed to take corrective action concerning discriminatory acts or comments by its employees; and (6) whether the person

USCA11 Case: 16-10763     Document: 29     Date Filed: 05/23/2016     Page: 125 of 131

accused of discrimination was included in the employer's decision making process concerning Dr. Scott's termination.

If you find that punitive damages should be assessed against Doctors Hospital, you may consider the evidence regarding its financial resources in fixing the amount of such damages.

USCA11 Case: 16-10763     Document: 29     Date Filed: 05/23/2016     Page: 126 of 131

## JURY INSTRUCTION NO. 11

### 3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

USCA11 Case: 16-10763   Document: 29   Date Filed: 05/23/2016   Page: 127 of 131

## JURY INSTRUCTION NO. 12

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DR. MICHELLE G. SCOTT,

          **Plaintiff,**

v.                                   **Case No:  8:14-cv-1762-T-30TBM**

SARASOTA DOCTORS HOSPITAL,
INC., a Florida Corporation

          **Defendants.**

_____

## JUDGMENT IN A CIVIL CASE BASED ON JURY VERDICT

This action came before the Court for a trial by jury.  The issues have been tried and the jury has

rendered its verdict.

       **BASED ON THE JURY'S VERDICT, IT IS ORDERED AND ADJUDGED** judgment

is entered in favor of Defendant, Sarasota Doctors Hospital, Inc. and against Plaintiff, Dr. Michelle

G. Scott.

Date: January 22, 2016             SHERYL L. LOESCH, CLERK

                                 By: R. Korb, Deputy Clerk

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**DR. MICHELLE G. SCOTT,**

     **Plaintiff,**

**v.**                                 **Case No.  8:14-cv-1762-T-30TBM**

**SARASOTA DOCTORS HOSPITAL,
INC., et al.,**

     **Defendants.**

_____/


## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for New Trial (Dkt. 152) and Defendant Sarasota Doctors Hospital, Inc.'s Memorandum in Opposition (Dkt. 165).  The Court, having reviewed the filings and being otherwise advised in the premises, denies Plaintiff's motion.

## DISCUSSION

Plaintiff requests that the Court order a new trial because she contends that: (1) the jury's verdict was against the great weight of the evidence and (2) relevant evidence was improperly excluded.  Plaintiff has not met the high burden of proving entitlement to a new trial.

Under Fed. R. Civ. P. 59(a), a party may move for a new trial no later than twenty-eight days after the entry of judgment.  "A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of

justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). Notably, with respect to evidentiary issues, a new trial should not be granted "unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1287 (11th Cir. 2011); *see also Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) ("When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded.").

Plaintiff asserts that the jury's verdict finding that Defendant was not her joint employer was against the great weight of the evidence. The Court disagrees. As Defendant points out in its response, there was ample evidence to support the jury's finding through the testimony of Dr. Michael Schandorf, Ted Haumesser, Tamika Baker, Theresa Levering, Bob Meade, Plaintiff, and Dr. Joel Stern. At the close of trial, the Court instructed the jury on the applicable law, including the factors to weigh in determining joint employment. The evidence presented at trial was more than sufficient to allow the jury to weigh those factors and find that Defendant was not Plaintiff's joint employer.

Plaintiff also asserts that a new trial is warranted because the Court excluded a "me too" fact witness. Plaintiff proffered that Dr. Vasile, the "me too" witness, would discuss her personal interactions with Bob Meade as evidence of gender discrimination. The Court questioned Plaintiff about the relevance of Dr. Vasile's testimony, considered the parties' case law on the issue, and excluded Dr. Vasile's testimony. The Court need not repeat its

reasoning here and does not depart from that ruling.  The exclusion of Dr. Vasile had no

impact on the verdict.  Simply put, the jury returned a verdict for Defendant on the sole issue

of joint employment.  Plaintiff does not establish how Dr. Vasile's testimony would have

been relevant to that issue.

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion for New Trial

(Dkt. 152) is denied.

**DONE** and **ORDERED** in Tampa, Florida on March 7, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2014\14-cv-1762.newtrial-152-deny.wpd